[Crim. No. 14506. Second Dist., Div. One. Nov. 7, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LIONEL FARLEY, Defendant and Appellant.

Melvin Lebe, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce N. Perlman, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of robbery, first degree (§ 211, Pen. Code). Appeal is taken from the judgment.

Around 9:20 p.m. on May 19, 1967, a Negro male came into Robert's Liquor Store, threw down a quarter and asked Abraham Weltman for a pack of gum; Weltman gave him his change and the man left. Several minutes later he returned to the store with another Negro male, identified by Weltman as the defendant, who held a gun in his hand; defendant said to Weltman, "This is it. This is a stickup," pointed the gun at him and ordered him "Pull back and open the register." The other man went to the cash register and emptied it placing over $500 in a paper bag.

Mr. Weltman testified that the next time he saw defendant was four days later when he identified him from photographs shown to him by a police officer. Four days after that he saw defendant in person in a lineup at the station where he identified him as the robber. At the trial Mr. Weltman identified defendant as the man carrying the gun.

The defense was an alibi; defendant testified he was not at Robert's Liquor Store at the time of the robbery but elsewhere with James Logan and Johnny Orlando. James Logan testified for defendant.

Appellant claims that he was deprived of his constitutional right to a fair lineup procedure because he was not represented by counsel, others in the lineup were taller than he, his potential accusers were hidden from him and he could neither hear nor see them and he was required to participate in a large number of lineups which, coupled with the law of averages, would tend to cause him to be identified in connection with some crime; thus he argues that the in-court identification by Mr. Weltman was inadmissible because there is no

clear and convincing evidence that it was based upon an independent source.

The position that he was denied his constitutional rights when he was required to appear at a show-up without the assistance of counsel is not well taken. Since the show-up took place several weeks prior to June 12, 1967, the date of the decisions in *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] and *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], he may not rely on those cases in order to assert a right to counsel grounded in the Sixth and Fourteenth Amendments; instead he must demonstrate that the show-up procedure resulted in a denial of due process of law. (*People* v. *Haston,* 69 Cal.2d 233, 257 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Caruso,* 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Harris.* 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]; see also *Stovall* v. *Denno,* 388 U.S. 293, 300-301 [18 L.Ed.2d 1199, 1205-1206, 87 S.Ct. 1967].)[1] Our examination of the entire record convinces us that the show-up procedure here comported with due process; and appellant has failed to demonstrate that the lineup was ''so unnecsesarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'' (*Stovall* v. *Denno, supra,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Harris,* 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609].)

Appellant's claim that he was the shortest suspect in the lineup is predicated not on any of his own testimony but on Mr. Weltman's answer to two questions on cross-examination that the people in the lineup were taller but he did not remember their height or if anyone was the same size as defendant. Mr. Weltman was the victim, the only eyewitness to the robbery. He first identified defendant from among twelve photographs shown to him by the police. There is no evidence that defendant's photograph was made any more conspicuous than the others, that police in any manner suggested that he committed the crime, or ''that the pictures

---

[1]It is clear from *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], that the mere absence of counsel at the show-up does not per se require reversal on due process grounds; the People may, as here, establish by clear and convincing evidence that the in-court identification is based upon observations of defendant by the witnesses other than at the lineup identification. (338 U.S. at p. 240 [18 L.Ed.2d at pp. 1164-1165].)

were used to prime the witness[es] to identify defendant.''
(*People* v. *Feggans,* 67 Cal.2d 444, 449 [62 Cal.Rptr. 419, 432
P.2d 21].) Nor does it appear that defendant's height was an
issue. As to the lineup, defendant did not testify that the
others were taller than he; he complained that ''it seemed
like'' he was in 17 different lineups and he couldn't see his
accuser. We are not prepared to say under the circumstances
of this case that the fact that others may have been taller than
defendant, standing alone, would constitute unfairness. (See
*People* v. *Douglas,* 259 Cal.App.2d 694, 697, fn. 7 [66 Cal.
Rptr. 492].) Overall, the lineup procedure was standard and
nothing demonstrates that it was such as would result in an
''irreparable mistaken identification.'' Further, the proof is
clear and convincing that the in-court identification of de-
fendant by the victim was based on his own observations of
defendant during the robbery—at the time he was threatened
with the gun and robbed, defendant was standing ''about 6, 7
feet'' from him and he ''got a good look at defendant's
face''; in the courtroom he pointed to defendant as the man
who held the gun on him.

■ To support his contention that the trial judge erred in
denying his motion for a new trial because he failed to inde-
pendently consider the weight of the evidence in passing on
the motion, appellant quotes the following statement made by
the trial judge: ''It just is not my job, not my right, to
substitute my evaluation of the credibility of witnesses for
that of the jury, unless I feel that the testimony is just—not
necessarily inherently improbable but, at least, not believa-
ble.'' Conveniently ignored by appellant is the balance of
that statement[2] which shows that the judge considered the
testimony of the witnesses and properly denied the motion for
new trial because he could not say that the jury reached the
wrong verdict.

■ Defendant testified that on the night of the robbery he

[2] ''I think that the witness who identified this defendant was truthful.
I think he did his best to make his observations known.

''At the same time, it is true that the only evidence as to this defend-
ant is the eyewitness testimony.

''There was alibi testimony, which was a little shaky, but there was
no other corroborating evidence.

''The legislature and the courts have not required that there be any
further evidence in this sort of case.

''I think that under all the circumstances, even though I might have
reached a different result, I can't say that the jury was wrong in reach-
ing the determination it did.

''I have thought about this for some time and I feel that I can't
properly grant the motion.''

was elsewhere with James Logan and Johnny Orlando. On cross-examination the prosecutor asked him if, after he was arrested and the officers talked to him "about this case," they asked him where he was on the night of May 19, 1967, and defendant said "Yes"; then he asked "You did not tell the police officers that you were with James Logan and/or Johnny Orlando on that night, did you," and he answered, "No, I don't think so, I don't know." In a somewhat obscure argument appellant claims that it was error for the prosecutor to ask him the foregoing because "the result of such inquiry was to force [him] to impeach himself" which "would undercut the entire policy behind the *Dorado* decision, and would make a mockery of [his] right to remain silent in the face of police interrogation." We find nothing improper in this cross-examination. The question related specifically to the matter of alibi offered by defendant on direct examination (§ 773, Evid. Code), was one based upon a fact known to the prosecutor and indeed was asked for impeachment purposes. Further, appellant makes no claim that he was not properly advised of his constitutional rights or did not understand them, and interposed no objection to the questions in the trial court on the ground of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], or *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361].

 The claimed misconduct of the prosecutor in displaying to the jury a weapon not introduced in evidence and referring to it as the weapon used in the robbery is not supported by the record. The gun used to rob Weltman was not available; Weltman, who said he was no expert on guns, testified he did not know whether the weapon used was a revolver or an automatic pistol and told the prosecutor "If I would be shown the gun, I would know what it is." The prosecutor then holding a weapon said, "Sir, I will show you this revolver and ask you if the gun that you saw was similar to this"; Weltman answered, "It was similar, but had only one type" then sought to further describe the one he saw but clearly distinguished it from the gun in the prosecutor's hand, and further stated. "It was an older type gun. It didn't shine like that." Then for the record, the prosecutor described the gun he held. The next question was, "Mr. Weltman, when this gun was pointed at you by the defendant were you in fear?" and he answered, "Yes." A reading of the testimony of Mr. Weltman and the prosecutor's descrip-

tion of the weapon exhibited by him does not admit the confusion attributed to it by appellant. Nor does a fair interpretation of Mr. Weltman's testimony permit the inference urged by appellant that when the prosecutor referred to "this" gun he conveyed to the jury the impression that it was the gun he held that was used in the robbery. The word "this" was used in its generic sense and obviously meant "the" gun, referring to the weapon held on Mr. Weltman. We assume that this too was the understanding of defendant and his counsel for no objection or motion to strike was made.

■ Appellant's claim that he was denied the right to have the process of the court to compel the attendance of witnesses because the public defender's office refused to serve the subpoenas on his alibi witnesses and he had to rely on the sheriff's office which was "uninterested in [his] efforts . . . to achieve an acquittal" and in finding and serving his witnesses and which denied him secrecy as to their names is unsupported by the record. One alibi witness (Logan) was located and served and testified for the defense. From the fact that Orlando could not be located, appellant speculates that the sheriff was disinterested in seeing justice done and made no effort to look for and serve him; such speculation is unwarranted. His accusation that the sheriff violated his right to secrecy as to names of his witnesses is also based on an erroneous assumption that when the sheriff's office receives the names of a defendant's witnesses it automatically turns them over to the district attorney's office. There is nothing in the record to support any contention of a denial of effective process to compel defendant's witnesses to appear.

■ Finally, appellant cites as reversible error the denial of his motion that the public defender be relieved and he be allowed time in which to secure the services of private counsel. On June 21, 1967, the day the information was filed, the public defender was appointed to represent defendant. Shortly thereafter (on or before June 27, 1967, and before plea) defendant was released on bail and free to contact private counsel. On his appearances thereafter, June 27, 1967, July 3, 1967, and August 15, 1967, defendant was represented by the public defender but on none of these occasions did he see fit to complain, request a change of attorneys or make any effort to secure private counsel. On September 13, 1967, the day of trial, defendant for the first time requested that the public defender be relieved on the ground "I just don't want him to represent me" and "I just don't like the way he talks

to me." Defendant told the court he did not have private counsel but would like to "get" one and admitted that he had not tried to obtain a private lawyer. The judge indicated that had he come to court with private counsel who was ready to proceed he would grant his request but would not give him a continuance for the purpose of retaining one. The judge continued, "You have had plenty of time to get you one, Mr. Farley. I think you are just stalling," and denied the motion to discharge the public defender and for continuance.

"'The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if a party fails to offer evidence or is compelled to defend without counsel. [Citations.] . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" (*People* v. *Crovedi*, 65 Cal.2d 199, 206-207 [53 Cal.Rptr. 284, 417 P.2d 868].) In the light of defendant's failure to tender sufficient cause to relieve the public defender and give a substantial reason for his request for private counsel coupled with the ample opportunity afforded him to obtain private counsel, his failure to do so and the fact that the request was made on the day of trial, we cannot say that the trial judge abused his discretion in denying the motion.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.