[Crim. No. 23590. Jan. 24, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILIP COURTS, Defendant and Appellant.

786

**COUNSEL**

Sharon Quinn, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller, Lisa Lewis Dubois and Janice Rogers Brown, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—This court must determine whether the trial court abused its discretion when it refused to grant the accused a continuance to permit him to be represented by an attorney he retained approximately one week before trial.

I.

Appellant, Philip Courts, was charged by information with murder and use of a firearm. (Pen. Code, §§ 187, 12022.5.[1]) On July 19, 1982, he pled not guilty and denied the gun use allegation. The public defender was appointed to represent him, and trial was set for October 26th. Appellant was released on bail pending trial.

Sometime in early September, appellant approached Russell Swartz, a local attorney, with the intention of obtaining his services for the upcoming trial. At that time, appellant did not have sufficient funds to hire Swartz, but told him that he would try to raise the retainer. The two met several times during the month to discuss fee arrangements and other aspects of the case. At one point, Swartz suggested associating the public defender on the case. However, it was later learned that this was contrary to the public defender's policy.

In early October, Swartz went on vacation, expecting to return on October 18th. In the meantime, appellant continued his efforts to raise the fee.

A trial setting conference was held on October 18th. At the hearing, the public defender informed the court that appellant wanted a continuance in order to hire private counsel. Appellant explained that he had spoken to Swartz a few weeks earlier, that Swartz was to return that day from vaca-

---

[1]All statutory references are to the Penal Code unless otherwise stated.

tion, and that appellant had not had an opportunity to conclude financial arrangements. The court denied the request, explaining that it was "too late for coming into court . . . to be asking for another attorney"; appellant could not "wait to the last minute and say [he wanted] a continuance." Later that day, appellant met with Swartz to discuss fee arrangements. Swartz indicated his willingness to represent appellant if "some sort of continuance" were granted.

On October 21st, appellant concluded financial arrangements and paid a retainer to Swartz. Swartz agreed to take the case if the trial date were continued. That same afternoon or the following morning, Swartz's partner telephoned the court and asked that the matter be placed on calendar on October 22nd for substitution of attorneys and a continuance. However, the judge's secretary brought word back from the judge that since neither Swartz nor his partner was attorney of record, the motion could not be calendared. Next, Swartz's partner approached the public defender, who attempted to place the matter on calendar for October 22nd or October 25th, the following Monday. That effort was unsuccessful.[2]

On October 26th, the day set for trial, a disqualification motion was filed against the judge who had conducted the pretrial proceedings. (Code Civ. Proc., § 170.6.) The case was then assigned to another judge for trial.

The public defender renewed the motion for a continuance before the new trial judge. In support of the motion, Swartz appeared and testified as to his willingness to represent appellant. He believed, however, that in view of the seriousness of the charges, a continuance was necessary to protect appellant's right to a fair trial. After further questioning by the court and the prosecutor, the court denied the motion on the basis that the "retainer, in effect [was] not a retainer at all," since it was accepted on the ground that there would be a continuance.

After considering other matters in the case, the court permitted appellant to file a declaration summarizing the steps taken to secure retained counsel. The declaration reiterated appellant's desire for a substitution of attorneys and a continuance.

---

[2]Neither Swartz nor the public defender filed or attempted to file a written motion for a continuance. However, as Swartz explained at the hearing on October 26th, in the Shasta County courts "short-call items" such as this are normally calendared through an oral request to the judge with notice to the opposing party. Authority for such oral motions is found in section 1050, subdivision (b). (See *post,* fn. 6.)

In this case, the public defender made an oral request to the judge on October 22nd. The judge called him back and told him that the motion would not be placed on calendar either on Friday or Monday. No subsequent attempts to calendar the motion were made.

In the declaration, appellant explained that he did not wish to delay the proceedings, but wanted "to obtain confident and experienced trial counsel to represent [him] on very serious felony charges." As appellant declared, "this is the first case of this magnitude that [the deputy public defender] has tried, and . . . he does not have the experience to properly represent me in this matter." Appellant also stated that "the defense investigation in this case only began relatively recently and new information was being developed as late as Monday, October 25, 1982." He stated that he had consistently worked toward obtaining Swartz's services, "but [was] unable to obtain sufficient financing until [the previous] week."

After considering the declaration, the court set aside its earlier ruling, reconsidered the motion along with the other documents in the file, and once again denied the motion, this time without comment.

Appellant proceeded to trial and was convicted of involuntary manslaughter. (§ 192, subd. 2.) The jury found the gun use allegation true. Appellant was sentenced to four years in state prison. This appeal followed.

## II.

This court must decide whether the trial court's failure to grant a continuance constituted an abuse of discretion in the face of appellant's well-documented desire to be represented by private counsel and counsel's willingness to undertake that task. Several well-established principles guide this court's determination.

The right to the effective assistance of counsel "encompasses the right to retain counsel of one's own choosing. [Citations.]" (*People* v. *Holland* (1978) 23 Cal.3d 77, 86 [151 Cal.Rptr. 625, 588 P.2d 765].) Underlying this right is the premise that "chosen representation is the preferred representation. Defendant's confidence in his lawyer is vital to his defense. His right to decide for himself who best can conduct the case must be respected wherever feasible." (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 615 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333], fn. omitted.)

Protection of this right furthers other values important to our criminal justice system. The right to employ counsel of one's own choosing "is based on a value additional to that insuring reliability of the guilt-determining process. Here we are concerned not only with the state's duty to insure 'fairness' in the trial, but also with the state's duty to refrain from unreasonable interference with the individual's desire to defend himself in whatever manner he deems best, using every legitimate resource at his com-

mand." (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868].)

■ Both this court and the United States Supreme Court have emphasized that trial courts have the responsibility to protect a financially able individual's right to appear and defend with counsel of his own choosing. "A necessary corollary [of the right] is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth. [Citations.]" (*Chandler* v. *Fretag* (1954) 348 U.S. 3, 10 [99 L.Ed. 4, 10, 75 S.Ct. 1]; *People* v. *Holland, supra,* 23 Cal.3d at p. 87, fn. 10.) In addition, counsel, "once retained, [must be] given a reasonable time in which to prepare the defense." (*People* v. *Haskett* (1982) 30 Cal.3d 841, 852 [180 Cal.Rptr. 640, 640 P.2d 776].) Failure to respect these rights constitutes a denial of due process. (*Chandler* v. *Fretag, supra,* 348 U.S. at p. 10 [99 L.Ed. at p. 10]; *People* v. *Byoune* (1966) 65 Cal.2d 345, 348 [54 Cal.Rptr. 749, 420 P.2d 221].)

In view of the importance of these rights and the severe consequences which flow from their violation, the trial courts are required to "make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney." (*People* v. *Crovedi, supra,* 65 Cal.2d at p. 207.) To this end, "the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources . . . ." (*Id.,* at p. 208.)

■ Any limitations on the right to counsel of one's choosing are carefully circumscribed. Thus, the right "can constitutionally be forced to yield *only* when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People* v. *Crovedi, supra,* 65 Cal.2d at p. 208, italics added; *Maxwell* v. *Superior Court, supra,* 30 Cal.3d at pp. 613-614.) The right to such counsel "must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case." (*People* v. *Byoune, supra,* 65 Cal.2d at p. 346.)

■ Limitations on the right to continuances in this context are similarly circumscribed. Generally, the granting of a continuance is within the discretion of the trial court. (*Ungar* v. *Sarafite* (1964) 376 U.S. 575, 589 [11 L.Ed.2d 921, 931, 84 S.Ct. 841]; *People* v. *Crovedi, supra,* 65 Cal.2d at pp. 206-207.) A continuance may be denied if the accused is "unjustifiably

dilatory" in obtaining counsel, or "if he arbitrarily chooses to substitute counsel at the time of trial." (*People* v. *Byoune, supra,* 65 Cal.2d at pp. 346-347.)

However, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." (*Ungar* v. *Sarafite, supra,* 376 U.S. at p. 589 [11 L.Ed.2d at p. 931].) For this reason, trial courts should accommodate such requests—when they are linked to an assertion of the right to retained counsel—"to the fullest extent consistent with effective judicial administration." (*People* v. *Crovedi, supra,* 65 Cal.2d at p. 209.)

In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case, " 'particularly in the reasons presented to the trial judge at the time the request [was] denied.' " (*Id.,* at p. 207, quoting *Ungar* v. *Sarafite, supra,* 376 U.S. at p. 589 [11 L.Ed.2d at p. 931].)

The record establishes that appellant engaged in a good faith, diligent effort to obtain the substitution of counsel *before* the scheduled trial date. Nearly two months before trial, appellant contacted Swartz and discussed representation and the fee. During the weeks that followed, appellant attempted to raise the necessary funds. He conscientiously informed the court of his efforts as early as October 18th and made a motion for continuance on that date.

Moreover, as Swartz's testimony revealed, a lawyer-client relationship had been established—certainly by October 21st, if not before.[3] Thus, by the time of the October 26th motion, the court was not confronted with the "uncertainties and contingencies" of an accused who simply wanted a continuance to *obtain* private counsel. (*People* v. *Butcher* (1969) 275 Cal.App.2d 63, 69 [79 Cal.Rptr. 618].) Therefore, it cannot be said that appellant was "unjustifiably dilatory" in attempting to obtain the services of counsel of his own choosing. (*People* v. *Byoune, supra,* 65 Cal.2d at p. 346.)

---

[3]These facts are to be sharply contrasted with cases which have upheld the denial of a continuance on the ground that participation by a particular private attorney was still quite speculative at the time the motion for continuance was made. (See *People* v. *Massie* (1967) 66 Cal.2d 899, 910 [59 Cal.Rptr. 733, 428 P.2d 869]; *People* v. *Murphy* (1973) 35 Cal.App.3d 905, 915-916 [111 Cal.Rptr. 295]; *People* v. *Johnson* (1970) 5 Cal.App.3d 851, 858-859 [85 Cal.Rptr. 485]; *People* v. *Glover* (1969) 270 Cal.App.2d 255, 258-259 [75 Cal.Rptr. 629]; *People* v. *Farley* (1968) 267 Cal.App.2d 214, 220-221 [72 Cal.Rptr. 855].) The facts here also differ from cases in which the continuance request was premised on the accused's representation that he would *eventually* be able to hire counsel of his own choosing. (See *People* v. *Lefer* (1968) 264 Cal.App.2d 48, 50 [70 Cal.Rptr. 83].)

Furthermore, appellant cannot be faulted for lack of diligence in failing to conclude arrangements with Swartz while Swartz was on vacation. As *Crovedi* teaches, the "reasonable efforts" required of the courts to ensure that a financially able individual be represented by counsel of his choice assume greater importance where the accused is not responsible for the absence of retained counsel. (*People* v. *Crovedi, supra,* 65 Cal.2d at p. 207; see also *People* v. *Manchetti* (1946) 29 Cal.2d 452, 458 [175 P.2d 533].)

Although *Crovedi* dealt with the absence of retained counsel who was *already* representing the accused, its reasoning applies with equal force where circumstances beyond the accused's control render him temporarily powerless to take the steps necessary to *become* a full-fledged client. Even assuming appellant had raised the funds necessary to retain Swartz by early October, appellant cannot be held responsible for failing to conclude arrangements during his absence. The dissent's suggestion that appellant should have deposited the funds with Swartz before he left on vacation or with his partner during Swartz's absence (*post*, p. 798) assumes that a specific fee agreement and other aspects pertinent to Swartz's representation had been completed. The record affords no basis for that assumption.

The continuance request made on October 18th was only the second request by appellant for a continuance. (The first was a request for discovery which was denied.) Contrast this set of facts with those found in *People* v. *Reaves* (1974) 42 Cal.App.3d 852 [117 Cal.Rptr. 163]. There, the accused "previously and successfully obtained numerous continuances without indicating that there existed any reason to change attorneys." (*Id.,* at p. 856; see also *People* v. *Blake* (1980) 105 Cal.App.3d 619, 624 [164 Cal.Rptr. 480].)

The October 18th motion represented a timely assertion of appellant's intentions. (See *People* v. *Butcher, supra,* 275 Cal.App.2d at p. 69.) That motion was made more than a week before trial—at a time when it appeared that a retainer arrangement was imminent. Even if the motion were premature on the ground that no retainer had actually been paid, the court's reasoning that it was "last minute" and "too late" to substitute counsel was not a correct reading of the law.[4]

---

[4]In this regard, appellant's October 18th continuance request should be contrasted with the eve-of-trial, day-of-trial, and second-day-of-trial requests made in *People* v. *Rhines* (1982) 131 Cal.App.3d 498 [182 Cal.Rptr. 478], *People* v. *Blake, supra,* 105 Cal.App.3d 619, *People* v. *Johnson, supra,* 5 Cal.App.3d 851, *People* v. *Doebke* (1969) 1 Cal.App.3d 931 [81 Cal.Rptr. 391], *People* v. *Brady* (1969) 275 Cal.App.2d 984 [80 Cal.Rptr. 418], and *People* v. *Glover, supra,* 270 Cal.App.2d 255. In those cases, the Courts of Appeal found the lateness of the continuance request to be a significant factor which justified a denial where there were no compelling circumstances to the contrary. (Cf. *People* v. *Byoune, supra,* 65 Cal.2d 345.)

Assuming that the October 18th motion was premature, steps taken during the following week demonstrated the genuineness of appellant's diligence in securing Swartz's representation. Appellant paid Swartz the retainer on Thursday afternoon, October 21st. That same afternoon or the following morning, Swartz's partner attempted to calendar a motion for a continuance, but received word from the judge that he could not do so since his office did not represent appellant. Subsequent efforts on the part of his attorney of record, the public defender, proved unsuccessful. (See *ante,* fn. 2.)[5]

It is not clear why the court did not permit the motion to be calendared on either Friday or the following Monday. Both the Shasta County "short-call" policy for oral continuance requests (*ante,* fn. 2) and section 1050 provided ample authority for permitting such a request.[6] In any event, it is clear that Swartz was diligent in attempting to calendar a continuance request in advance of trial.

---

[5] The dissent would dismiss Swartz's testimony at the October 26th hearing as "replete with conjecture and hearsay." (*Post,* p. 799.) What the dissent fails to acknowledge is that the prosecutor offered *no* contrary evidence on the matters Swartz testified to. Further, the cross-examination of Swartz did not produce any inaccuracies or inconsistencies in his direct testimony. More telling perhaps is the fact that the trial judge did *not* deny appellant's continuance request based on the court's disbelief of Swartz's testimony. The conspicuous absence of any suggestion that Swartz was somehow misrepresenting the facts strongly suggests that the dissent's dismissal of Swartz's factual account is not well-taken.

[6] Section 1050, subdivision (b) provides in relevant part: "To continue any hearing in a criminal proceeding, including the trial, a written notice must be filed within two court days of the hearing sought to be continued . . . *unless the court for good cause entertains an oral motion for continuance.*" (Italics added.)

The dissent's suggestion that a written motion was required in these circumstances is untenable. (*Post,* p. 799.) If, as Swartz testified, no *oral* motion could be calendared on the ground that neither he nor his partner was counsel of record, why would not a *written* motion have met the same fate?

The record is clear that Swartz desired a hearing on the continuance *in advance of trial,* so that he could resolve in a timely fashion "the issue of substitution and continuance . . . ." If one assumes the dissent is correct, Swartz did not attain the status of "retained counsel" until Thursday, October 21st, the date on which he was paid. Accordingly, the earliest a hearing on a written motion could have been heard was Monday, October 25th, one day before trial. It is quite understandable, then, why Swartz sought to orally calendar such a motion before that date.

Swartz's partner and the public defender met with uniformly inexplicable opposition to all efforts to calendar such a motion. Those circumstances furnished good cause for the court to hear the motion on October 26th without a written motion calendared for that date. There is no suggestion in the record that appellant was somehow dilatory in failing to make his continuance request sooner than on the day of trial.

Finally, if the absence of a written motion was the major source of concern that the dissent intimates, why did the prosecutor fail to object on that ground? And, more importantly, why did the trial court go ahead and consider the motion on its merits? As the record makes clear, the trial court's sole stated reason for denying the continuance request had nothing to do with the fact that appellant had failed to make his intentions clear before trial, but rather with the assumption that Swartz' retainer was somehow other than bona fide, having been "conditioned" on the grant of a continuance. (See *ante,* p. 788; *post,* p. 794, fn. 8.)

In this case, "[t]here was neither lack of diligence in seeking a replacement [for appointed counsel] nor undue delay in apprising the court of the situation and seeking [a] continuance." (*People* v. *Gzikowski* (1982) 32 Cal.3d 580, 589 [186 Cal.Rptr. 339, 651 P.2d 1145].) Appellant took reasonable and timely steps to create a relationship with private counsel. His representatives attempted to protect that relationship by moving for a continuance. Thus, the state's interest in ensuring an expeditious resolution of the case became far less compelling.

Further, there were no circumstances which warranted the limitation of appellant's right to counsel based on considerations of judicial efficiency. (*People* v. *Byoune, supra,* 65 Cal.2d at p. 348; *People* v. *Crovedi, supra,* 65 Cal.2d at p. 207.)

The record fails to show that a continuance would have significantly inconvenienced the court or the parties. (*People* v. *Byoune, supra,* 65 Cal.2d at p. 348.) There was no evidence that the Shasta County Superior Courts were particularly congested during this period. If anything, the availability of two judges to try the case (see *ante,* p. 788) suggests the contrary.[7] No mention of inconvenience to jurors, which might have been relevant to the October 26th request but certainly not to the October 18th request, was ever made. On October 26th, the only reason the court gave for denying the request was that the retainer was "not a retainer at all" because it was conditioned on the grant of a continuance. That reasoning by the court was specious.[8]

In addition, the prosecutor failed to express any valid concern about an inconvenience to witnesses which might have resulted if a continuance had

---

[7]Contrast these circumstances with those in *People* v. *Doebke, supra,* 1 Cal.App.3d 931. In denying the accused's continuance and substitution request the day of trial, the trial court, in "a lengthy and meticulous review of the trial calendar, ably demonstrated that [the] continuance would not only have seriously disrupted the already congested civil calendar and jeopardized several cases approaching the statutory deadline for trial, but it also would have disrupted the criminal trial calendar as well." (*Id.,* at p. 940.)

[8]It is obvious that there *was* a retainer agreement, since appellant paid Swartz a fee to represent him. (See Webster's New Internat. Dict. (3d ed. 1961) p. 1938; Black's Law Dict. (4th ed. 1951) p. 1479.)

In addition, the "mammoth responsibility" of defending a client charged with murder (*In re Hall* (1981) 30 Cal.3d 408, 434 [179 Cal.Rptr. 223, 637 P.2d 690]) should not be undertaken without assuring that effective assistance—which contemplates more than a few days' preparation for trial—can be rendered. Thus, it would not only have been unreasonable but unethical for Swartz to have accepted the retainer without insisting on some time to prepare the defense. (See rule 6-101(2), Rules Prof. Conduct of State Bar; ABA Code of Prof. Responsibility, DR 4-101(A)(2), EC 4-1.)

Finally, to adopt the trial court's reasoning would give the courts unfettered discretion to deny a defendant his right to "counsel of his choice" by the simple device of denying a continuance. *Crovedi* and *Byoune* were never intended to sanction such an unconstitutional result.

been granted. On October 18th, when appellant made his first request for a continuance, the prosecutor did note that witnesses had been subpoenaed for trial on October 26th. However, their appearances were not imminent, so resetting the trial would not have disrupted their schedules. On October 26th, the prosecutor failed to indicate whether any witness would have suffered hardship if asked to return on a different date. (*People* v. *Byoune, supra,* 65 Cal.2d at p. 348, fn. 2.)[9] As the trial testimony subsequently bore out, all of the prosecution's witnesses with one exception were residents of the area or employees of Shasta County—and could all have been resubpoenaed.

An accused's timely assertion of his right to retained counsel may in some instances cause some disruption in a trial court's calendar. However, the frequency of such occurrences should not be overstated, for the number of indigents who become financially able to retain private counsel before trial is relatively small. *Crovedi*'s requirement that trial courts exercise "resourceful diligence" in protecting the right to chosen counsel (65 Cal.2d at p. 209) must be respected, even when a byproduct of a concrete and timely assertion of that right is some disruption in the process.[10]

## III.

Appellant was diligent in his efforts (1) to secure counsel of his own choosing *before* the date of trial, and (2) to apprise the court of his wishes

---

[9]The dissent's reference to the prosecutor's comments at the October 26th hearing is incomplete. Considered in context, it is clear that his objections focused only on the insufficiency of the showing for a substitution of attorneys under *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

The totality of the prosecutor's argument was as follows: "Your Honor, I don't believe there have been any grounds stated as the basis of the continuance. Under the principles of *People* v. *Marston* [*sic*], which is a Supreme Court case which is found in Cal 3rd 2nd [*sic*] and I'm not sure which volume, but anyway, it deals with situations analogous to this where the Defendant, at or near the time or even during the time of trial, requests a continuance, and there must be some reason why he requests that one attorney be substituted for another. All we've heard so far is that the Defendant has spoken with Mr. Swartz, has made some efforts towards retaining Mr. Swartz, would like to have Mr. Swartz as his attorney and has given him some money. But there's no indication there's any type of a breakdown between the relationship [*sic*] he has between his currently appointed counsel and I think that's an issue that the Court must address in resolving this question. Thank you."

As this passage makes clear, nothing was said about any inconvenience that would befall the district attorney or his office were a continuance granted. Moreover, reliance on *Marsden,* a case which involved the substitution of *appointed* counsel for another *appointed* counsel, was inapposite. The standards for evaluating such requests are quite different than those used in the retained counsel context.

[10]Appellant's own declaration emphasized this point. "[O]n a charge as serious as murder, . . . a short delay of a couple [of] months on a trial of a case that is only approximately five months old will not prejudice the People, but will give me the opportunity to complete the investigation, and I feel that it is necessary before going to trial, that I be allowed the opportunity to have experienced trial counsel to preserve my rights under the sixth and fourteenth amendments of the United States Constitution."

at the earliest possible time. The trial court's failure to respect appellant's right to chosen counsel and to grant the requested continuance constituted error.

■ Deprivation of appellant's right to counsel of his choice "requires reversal regardless of whether in fact he had a fair trial." (*People* v. *Gzikowski, supra,* 32 Cal.3d at p. 589; accord *Reynolds* v. *Cochran* (1961) 365 U.S. 525, 531 [5 L.Ed.2d 754, 758, 81 S.Ct. 723]; *People* v. *Byoune, supra,* 65 Cal.2d at p. 346; *People* v. *Crovedi, supra,* 65 Cal.2d at p. 205.)[11] As this court recently explained, "[p]roviding appellant with appointed counsel was an insufficient remedy since his constitutional right to counsel entailed more than the presence of a skilled advocate." (*People* v. *Holland, supra,* 23 Cal.3d at p. 89.) Moreover, to assess "why or how an accused's trial was disadvantaged by injecting an undesired attorney into the proceedings would require an impossibly speculative comparison" of appointed counsel's representation with chosen counsel's unrealized performance. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 946 [196 Cal.Rptr. 339, 671 P.2d 843].) "No appellate court can or should engage in that kind of analysis when such fundamental rights hang in the balance." (*Ibid.*)

The judgment is reversed.[12]

Mosk, J., Broussard, J., and Reynoso, J., concurred.

**LUCAS, J.**—I respectfully dissent. The trial court did not abuse its discretion in denying defendant's belated request for a continuance. The majority reaches a contrary conclusion only through the use of selective hindsight and by substituting its judgment for that of the trial court.

As we reiterated in *People* v. *Byoune* (1966) 65 Cal.2d 345, 346-347 [54 Cal.Rptr. 749, 420 P.2d 221], a case significantly relied upon by the ma-

---

[11]At oral argument, the Attorney General strenuously urged this court to find this error harmless under *People* v. *Chavez* (1980) 26 Cal.3d 334, 348-349 [161 Cal.Rptr. 762, 605 P.2d 401]. Not only would such a holding contravene well-settled precedent, including a right-to-retained-counsel case decided after *Chavez* (*People* v. *Gzikowski, supra,* 32 Cal.3d at p. 589), but there are sound reasons to decline the invitation.

*Chavez* dealt with the denial of *appointed* counsel of the accused's choice, not retained counsel. The distinction is more than a semantic one. The state has far less reason to interfere with an accused's ability to retain a legal advocate when it plays no part in the appointment process. When the state erroneously infringes an accused's right to appear and defend with retained counsel, considerations as to whether the accused was competently represented by an advocate of the *court's* own choosing become irrelevant. Imposition of any standard short of a per-se reversal would inevitably erode the right itself.

[12]In view of this disposition, the court need not reach appellant's alternative claim that the trial court committed error under *People* v. *Marsden, supra,* 2 Cal.3d 118, in failing to conduct an inquiry into the grounds for appellant's dissatisfaction with appointed counsel.

jority, we held in *People* v. *Crovedi* (1966) 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868], that due process "comprehends a right to appear and defend with retained counsel of one's own choice. We further observed, however, *that this right is not absolute*: . . . A defendant may not, for example, demand a continuance if he is unjustifiably dilatory in obtaining counsel (*Ungar* v. *Sarafite,* 376 U.S. 575, 590 [11 L.Ed.2d 921, 84 S.Ct. 841]), or if he arbitrarily chooses to substitute counsel at the time of trial (*People* v. *Morris,* 226 Cal.App.2d 12, 15 [37 Cal.Rptr. 741])." (Italics added.) Each case must be determined on its own merits; no "mechanical tests" exist. (*Id.* at p. 207.)

The decision to grant or deny a continuance "is within the sound discretion of the trial court" (*People* v. *Blake* (1980) 105 Cal.App.3d 619, 624 [164 Cal.Rptr. 480]; *People* v. *Crovedi, supra,* 65 Cal.2d at pp. 206-207; see *People* v. *Duck Wong* (1976) 18 Cal.3d 178, 189 [133 Cal.Rptr. 511, 555 P.2d 297]) and it is up to the defendant timely to assert his right to "appear and defend with counsel of his own choosing" (*People* v. *Kaiser* (1980) 113 Cal.App.3d 754, 761 [170 Cal.Rptr. 62]; *People* v. *Rhines* (1982) 131 Cal.App.3d 498, 506 [182 Cal.Rptr. 478]). Once a continuance has been denied, on appeal "[t]he burden is on appellant to establish an abuse of judicial discretion . . . ." (*Rhines, supra,* at p. 506; *Kaiser, supra,* at p. 761; *Blake, supra,* at p. 624.)

A review of the underlying facts here demonstrates that the trial court was well within its discretion in denying defendant's motion for continuance. Defendant failed to retain private counsel or notify the court of his desire to do so for almost three months after the trial date had been set.

On July 26, 1982, trial in this matter was set for October 26. Defendant was free on bail through trial. Sometime in September defendant apparently began speaking with private counsel, Russell Swartz, about the possibility of retaining him as his attorney in place of the appointed public defender. These meetings did not result in Swartz assuming representation of defendant, because defendant was unable to raise the necessary retainer. During this period, the court was not apprised of defendant's attempts or of his interest in retaining private representation.

On the morning of Monday, October 18, defendant and his public defender attended the trial readiness conference. Counsel requested a continuance on the ground that certain test results might not be ready until the end of that week. The court inquired as to the People's position on a continuance and was informed that all witnesses had been subpoenaed and were ready. The court denied the motion and put the case over to the afternoon for consideration of other matters.

At the end of the afternoon hearing, defendant's counsel indicated to the court for the first time that defendant had informed him that he wished to retain a private attorney. In amplification, counsel stated defendant "has talked to private counsel and I don't know how far they are away from arrangements . . . ." The court then directly questioned defendant who stated he had first talked to Swartz "a couple of days before he [Swartz] went on vacation" and it had "been about three weeks or longer since I had a chance to talk to him." Defendant added that while Swartz had returned that day, he had not yet spoken to him.

The trial court denied the request, remarking it was too late. When the judge continued "and you haven't made the financial arrangements with Mr. Swartz?" defendant replied "Well, that's hard to do." The majority characterizes this exchange as "represent[ing] a timely assertion of appellant's intentions." (*Ante*, p. 792.) However, this step merely apprised the court of a *desire* to retain counsel, but simultaneously made clear that the desire had yet to be satisfied. Nonetheless, the majority opinion is permeated with the implication that the court would have done well to grant this request for continuance despite the fact that no retention of counsel had occurred.[1]

In contrast, I find it impossible to conclude that the majority could even hint that the trial court in any way abused its discretion at this point. When the court denied the request it did so on the basis of defendant's representation that he had not spoken to counsel for more than three weeks and had yet to make definite arrangements to retain him.

Nor can I join in my colleagues' conclusion that "appellant cannot be faulted for lack of diligence in failing to conclude arrangements with Swartz while Swartz was on vacation." (*Ante*, p. 791.) Swartz' vacation in fact lasted only 10 days according to his testimony at the hearing on October 26. Moreover, there is absolutely no indication that while Swartz vacationed, his office shut down. The record reflects that he practiced with at least one partner. Nothing would have prevented defendant from depositing money with Swartz before he left on his vacation or with Swartz' office during the time the attorney was gone. Furthermore, the fact that defendant should not be afforded greater leeway because of his counsel's vacation is conclusively established by the fact that when defendant went to see Swartz on October 18 or 19 following his court appearance, *he was still unprepared to retain him as his attorney.* Not until late on October 21 was defendant able to make a down payment. The trial court's denial of a continuance on October 18 thus can in no way be considered a denial of defendant's right

---

[1]For example, my colleagues only grudgingly "assume" that the October 18 motion may have been premature. (*Ante*, p. 792.)

to counsel of his choice; on October 18, there was no counsel willing and ready to represent defendant other than the public defender.

Probably the most important fact with regard to the October 18 motion is that the judge hearing the October 26 motion *was never informed during the proceeding that the issue had been previously raised in open court.* On the morning of trial, October 26, defendant disqualified the judge who heard the October 18 motions. The case was then reassigned to a new judge unfamiliar with the case. When he started hearing the motion for continuance, the judge remarked "This is an oral motion, [it] hasn't been noticed?" The public defender agreed stating "we have attempted to put the matter on calendar for this motion but we have not been able to do that . . . ." The judge inquired as to when attempts had been made and counsel responded that the "first attempt" to have the matter calendared had occurred the Friday before, which was October 22. This characterization of the timing continued throughout the proceedings. As a result, when the trial judge whose order is at issue in this appeal exercised his discretion, *he was unaware of the October 18 motion.* It completely escapes me how that motion could therefore be used as any basis for demonstrating that this judge abused his discretion in denying the continuance as he did. How can an abuse of discretion occur based on facts not presented to the court?

The majority next concludes that the steps taken after defendant finally made a payment to Swartz on Thursday, October 21, "demonstrated the genuineness of appellant's diligence in securing Swartz's representation." (*Ante,* p. 793.) In support, my colleagues cite the efforts assertedly made to have the motion for a continuance placed on calendar on Friday, October 22, or Monday, October 25, and conclude "It is not clear why the court did not permit the motion to be calendared" because there was "ample authority" to do so under both local policy and Penal Code section 1050. (*Ante,* p. 793.)

The reference to local "policy" apparently is based on Swartz' testimony during the October 26 hearing. Initially, I note that Swartz forthrightly explained throughout that he personally had not handled the requests for continuance; his partner and the public defender had. No affidavits were submitted by those directly acting on defendant's behalf or in response to those efforts, and Swartz' testimony necessarily was replete with conjecture and hearsay.[2] After Swartz observed that normal practice with short-call

---

[2]For example, Swartz testified, regarding contacts made with the judge's office for the purpose of requesting that the continuance motion be calendared, that: "[I]t was my understanding that [the public defender's] office contacted Judge Abbe's office, asking that the matter be put on calendar for the purpose of making a motion to continue and that Judge Abbe's office called the Public Defender's Office back and told them that it would not be put on calendar Friday afternoon and that Judge Abbe would not put it on calendar on Monday. This is what I was told by a secretary from [the public defender's] office, that the information had come from the court."

items was to ask the judge to calendar the matter at a specific time, the court inquired "Did your office or you personally indicate that you wished to have an order shortening time for such a motion? . . . [¶] Was that communicated to the Court?" Swartz replied that he had not talked with the court, his partner had, and "it was probably—that's inherent in our request, that we have a hearing right away on the issue of substitution and continuance . . . ." He further stated that he did not "believe" that the court had been informed that a written motion would be filed, nor were there any plans by the various counsel to make such a motion.

Penal Code section 1050, subdivision (b), states "To continue any hearing in a criminal proceeding, including the trial, *a written notice must be filed within two court days of the hearing sought to be continued,* together with affidavits or declarations detailing specific facts showing that a continuance is necessary, *unless the court for good cause entertains an oral motion* for continuance. Continuances shall be granted only upon a showing of good cause." (Italics added.) The majority ignores the fact that a timely written motion could have been filed. The court was not obligated to place an oral motion on the calendar by the provisions of section 1050, especially absent a showing of good cause. Here, we have no idea of what information was transmitted during the oral requests for a hearing on a motion for continuance and whether "good cause" to waive the requirement of a written motion was shown. Nor did defendant's counsel assert that no written motion was filed because counsel believed it would have been treated in the same manner as the oral motion. The majority however assumes such would be the case. (See *ante,* p. 793, fn. 6.) In fact, because "good cause" must be shown in order for a court to entertain an oral motion, while no such showing must be made for a written motion to be considered, a written motion accompanied by a request for an order shortening time may well have successfully expedited matters.

These actions were not taken, however, and instead, on the morning of trial, with a jury panel called for duty and witnesses already subpoenaed, defendant's motion for continuance based on the existence of retained counsel was first presented to the court. Under the circumstances, the trial court obviously did not abuse its discretion in refusing to grant the relief sought. To sum up the facts, defendant had been on bail for the three months between trial setting and trial date. He had talked to private counsel for well over a month before trial was to commence but did not come up with a retainer until days before trial date. Counsel then agreed to represent him only if a continuance was granted. After counsel was paid, only informal attempts were made to have a motion for continuance heard. When the motion was in fact heard on the morning of trial, the only information presented regarding the reasons for delay in seeking to substitute counsel

was defendant's inability to pay. The previous request for continuance made before counsel was retained was never mentioned. (See *People* v. *Blake, supra,* 105 Cal.App.3d at pp. 624-625 [where defendant had reasonable opportunity to obtain counsel of choice, no abuse of discretion if no continuance granted at start of trial].)

The majority attempts to fault the *prosecution* for failing to show a lack of good cause by affirmatively demonstrating inconvenience to the witnesses, jury and court. It is undisputed that a jury had been called and witnesses subpoenaed. Moreover, it is clear that the prosecution objected to the request for continuance. (See *ante,* p. 795, fn. 9.) The burden was on defendant to demonstrate affirmatively his diligence and good cause for the continuance. This he failed to do.

Rather than posing a contrast to cases involving "eve-of-trial, day-of-trial, and second-day-of-trial requests" where appellate courts have "found the lateness of the continuance to be a significant factor which justified a denial where there were no compelling circumstances to the contrary" (*ante,* p. 792, fn. 4), this case belongs squarely within that line of precedent. The majority has plucked it out of position for no apparent reason and has substituted its judgment and the use of hindsight for a proper determination of whether the trial court abused its discretion in light of the information presented to it.

I would affirm the judgment.

Kaus, J., and Grodin, J., concurred.