[Crim. No. 20679. Oct. 18, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN GZIKOWSKI, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Supreme Court, Michael G. Millman and Eric S. Multhaup, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NEWMAN, J.**—Defendant appeals from a judgment sentencing him to death for first degree murders of Raymond Velonza and Gary Orais on April 20, 1978. The special circumstance underlying the sentence was that he "was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts" and "has in this proceeding been convicted of more than one offense of murder of the first or second degree." (Former Pen. Code, § 190.2, subd. (c)(5) [Stats. 1977, ch. 316, § 9].) He was also found, under Penal Code section 12022.5, to have used a shotgun in committing

the crimes. He was tried jointly with codefendant Raul Villasenor, who was convicted of second degree murder and found to have been armed with a gun (Pen. Code, § 12022, subd. (a)).

We reverse for error in depriving defendant of representation by counsel of his choice. That ruling requires only a brief summary of the evidence.

About 1:30 a.m. a white pickup truck, owned and driven by codefendant, turned right from Seventh Street onto Market Street in San Francisco and pulled up alongside a Cadillac parked on Market. Defendant, in the passenger seat, fired a shotgun three times into the Cadillac's front left window and killed the two occupants. Defendant and codefendant were pursued by police down Market, right on Sixth, right on Mission, and into a parking lot where they were arrested. As defendant left the truck the shotgun fell to the ground. A loaded revolver was found under the driver's seat.

Defendant admitted the shooting but contended he shot to save his own life because he believed the Cadillac driver was reaching for a gun. That belief was claimed to stem not only from observations at the scene but also from an altercation with the Cadillac occupants earlier that evening.

At the penalty phase, defendant offered no evidence in mitigation. The prosecution presented evidence of one incident in aggravation. A woman testified that, while intoxicated on the street at night, she accepted a motorcycle ride and was taken to a house where defendant and others compelled her to orally copulate with them. All occupants of the house, including defendant, were arrested; but the woman declined to testify against them, and there was no evidence they ever were prosecuted for the incident.

### DENIAL OF CONTINUANCE TO OBTAIN COUNSEL

Nancy Watkins represented defendant from arrest through trial. Codefendant had separate counsel. At the joint preliminary hearing on May 24, a month after arrest, Attorney Jamie Sutton appeared and stated that two days earlier he had been retained by defendant as cocounsel to "take over the preliminary hearing trial aspects of the case." Sutton's continuance motion for time to prepare was denied as untimely; and the hearing proceeded, with Sutton cross-examining and making objections for defendant. Watkins participated less extensively than Sutton.

On July 6 in superior court Sutton filed a motion to withdraw as counsel, attaching a declaration of June 28 that "[i]rreconcilable differences and

conflicts" had arisen with defendant making it "impossible for the declarant to effectively and properly represent [him]" and that "Ms. Watkins will remain as counsel of record."The motion was granted at a July 12 hearing.[1] The transcript does not indicate the presence of any lawyer. The court informed defendant that Sutton had moved to withdraw, leaving Watkins as the remaining counsel, and asked defendant if he had any objection. He answered "No"; the motion was granted.

The minutes state that both Sutton and Watkins attended the hearing, but Watkins on July 24 denied in open court that she had been present or been given notice. On July 31 in open court she stated that she had heard indirectly, on July 9 or 10, that Sutton was withdrawing but that from her client she learned of the actual withdrawal on July 14.

At a discovery hearing on July 19, Watkins sought continuance of pretrial and trial, previously set for July 24 and 31. She stated that her cocounsel had withdrawn and that she had just been served with co-defendant's motions and felt unable to prepare for both them and a trial "including the death penalty phase." The court told her to file whatever motion she deemed appropriate. Next day she filed a motion, to be heard July 24, amplifying her courtroom statements and asking for a continuance to mid-September.

At the July 24 pretrial hearing the court said it had read and considered the motion and "Discussed the matter with counsel." Watkins stated "[f]or the record" that her motion was based on (1) "withdrawal of former co-counsel who was expected to try the case," (2) "my inexperience, which has been outlined to the court in chambers," and (3) her responsibility for motions. She also stated she had "diligently searched and continue to search for someone to come in and assist me on this." The court denied continuance.

Counsel's statements in chambers, immediately before that hearing, are set forth in a settled statement. ██ ██ ██ Only the judge and defense counsel were present.[2] Codefendant's attorney stated he con-

---

[1]The pretrial proceedings of July 1978 mentioned in this opinion were held before Judge Claude Perasso.

[2]The settled statement was prepared in compliance with this court's order of June 6, 1980, and its accuracy and inclusion in the record are not questioned in this appeal. Rule 36 (b), California Rules of Court, provides that, as part of the preparation of the record of a criminal appeal, the appellant may apply to the trial court for settlement of a statement of any part of the "oral proceedings" of which a transcript "cannot be obtained for any reason." Though oral proceedings may include those that a court reporter did not attend (see Draftsman's Explanatory Note to rule 4(e); Witkin, *New California Rules on Appeal* (1944) 17 So.Cal.L.Rev. 79, 118; see also, e.g., *Burns* v. *Brown* (1946) 27 Cal.2d 631,

sidered Watkins too inexperienced and incompetent to try such a serious case and that he had agreed to represent codefendant on the explicit understanding that a more experienced attorney would be retained for defendant. Watkins then came into chambers and explained that neither she nor defendant had intended that she try the case, that she was too inexperienced to do so, and that Sutton had been given responsibility for trial, with her role limited to "law and motion work, pretrial, and to providing legal research and back-up assistance during trial." She said she had graduated from George Washington Law School in May 1975 and been admitted in California in June 1976. She had handled one misdemeanor trial for resisting arrest (Pen. Code, § 148) and had commenced a robbery trial that was dismissed when the complainant failed to identify her client. Her only other trial experience was in a law school clinical program, trying a petty theft case. When she learned of Sutton's withdrawal she

---

636 [166 P.2d 1]), they do not encompass discussons between court and counsel or other matters that are not properly part of the appellate record. An unreported discussion that has no bearing on appeal is not an oral proceeding that may be settled under rule 36 (b).

An applicant for "permission to prepare a settled statement" must show that the subject matter is in fact part of the oral proceedings. (See rule 36 (b).) The test is parallel to that for augmentation of the "normal record" (rule 33 (a)) in an indigent's appeal; appellant must establish "with some certainty *how* the [additional] materials he requests may be useful to him on appeal." (*People* v. *Gaston* (1978) 20 Cal.3d 476, 482 [143 Cal.Rptr. 205, 574 P.2d 423].)

*Gaston* held that, when a transcription of *reported* events is sought, the showing of possible usefulness on appeal should not depend on counsel's statement of what that transcription, if prepared, would show; it was deemed unfair to make counsel designate helpful portions of a reported proceeding from memory, without having access to the verbatim record. But when a settled statement of *unreported* matters is requested, the memories and notes of the participants are the only sources from which it can be derived. Therefore counsel may fairly be required to draw on those sources to demonstrate how a particular unreported matter may be useful on appeal.

Accordingly we conclude that appellant must show at the outset with some certainty how the contents of an unreported matter, as he understands them, constitute an "oral proceeding," i.e., one that may be useful on appeal. In deciding whether to grant permission to prepare a settled statement, the trial court should accept appellant's version of its expected contents.

Once settlement is ordered, the court has broad discretion to accept or reject counsel's representations in accordance with its assessment of their credibility. *Pollard* v. *Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 376, fn. 1 [115 Cal.Rptr. 648, 525 P.2d 88]; *Burns* v. *Brown, supra,* 27 Cal.2d 631, 636.) However, it cannot refuse to make that assessment. It may decline to settle a statement only if, after resort to all available aids, including the judge's own memory and those of the other participants, it is affirmatively convinced of its inability to do so. (*Western States Const Co.* v. *Municipal Ct.* (1951) 38 Cal.2d 146, 148-149 [238 P.2d 562].) In that case, its reasons should be stated on the record. (*Id.,* at p. 150; see also *Keller* v. *Superior Court* (1950) 100 Cal.App.2d 231, 234 [223 P.2d 309].)

Here the settled statement says that the trial judge "has no present, independent recollection of anything said on the afternoon of July 24, 1978, concerning this case" and that it is based on the representations of Watkins and codefendant's counsel. Those words imply acceptance of counsel's credibility. Moreover, the settled statement's account is corroborated by Watkins' declaration of July 28, 1978, filed July 31 (see fn. 3, *post*).

unsuccessfully sought a replacement, interviewing three attorneys for at least half a day each. Because she thought she would not be trying the case she has only recently begun trial preparation. Being inexperienced, she needed more time to find a competent replacement as trial counsel.

When the case was called on July 31, Watkins responded she was not ready for trial and filed a new motion for continuance with an attached declaration reiterating what she had said in chambers on July 24.[3] The judge denied the motion, remarking that it was the "same motion" denied earlier. Codefendant's counsel then joined in the motion "for the record," saying that Watkins' "lack of preparedness can only accrue to the disadvantage of my client."

The prosecution expressed no opposition to a continuance; there was no indication that it would have led to unavailability or inconvenience of any witness or in administrative difficulties. Waivers by both defendants of time for trial were attached to the motion filed July 20.

### DEPRIVATION OF COUNSEL OF DEFENDANT'S CHOICE

█ The right to effective assistance of counsel (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 15) encompasses the right to retain counsel of one's choice. *People* v. *Holland* (1978) 23 Cal.3d 77, 86 [151 Cal.Rptr. 625, 588 P.2d 765].) █ Though entitlement to representation by a particular attorney is not absolute (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868]), "the state should

---

[3]The declaration, dated July 28, stated in part: "4. That I was admitted to practice in the State of California in June, 1976, and since then have handled a number of misdemeanor cases but only three felony cases, of which the present case is one, and that I have taken only two cases to trial in this State—one misdemeanor and one felony. [¶] 5. That I persuaded Defendant to retain co-counsel (Jamie Sutton) so that I would not have to handle this case alone, because of both my inexperience and the pressures of time, considering the magnitude of preparing a Death Penalty case. [¶] 6. That co-counsel and I had divided the burden of preparation such that I was responsible for the motions and he was to have been responsible for the trial. [¶] 7. That co-counsel's withdrawal from the case barely more than two weeks prior to trial was a surprise to me (I was not noticed) and has left me with a greatly increased burden of preparation that I have not been able to meet alone. [¶] 8. That I have diligently attempted to find other counsel to assist me in the preparation of this case, but was unable to do so. [¶] 9.That as soon as I realized that I could not get co-counsel, I made a motion for a continuance in the pre-trial as well as the trial of this matter, which motion was denied on July 24, 1978. [¶] 10. That co-counsel's withdrawal has effectively given me only two weeks to prepare the entire case, including all motions, in a death penalty case where the evidence appears to be strong. [¶] 11. That because of the dramatic change in the nature of my involvement in the case, I am not prepared and therefore not competent to proceed to trial on July 31, 1978. [¶] 12. That I need more time to seek the assistance of an attorney who is knowledgeable about and experienced in murder and death penalty cases in order to adequately prepare. [¶] 13. That I am in no sense at all prepared for the penalty phase of this case."

keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and . . . that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case" (*id.,* at p. 208).

This court repeatedly has applied those principles. In *Crovedi* a trial was recessed on its fourth day because defense counsel suffered a heart attack. His partner sought a continuance to the time, two months later, when he was expected to be able to resume trial. Instead, two weeks after recess the court appointed the partner as counsel and ordered resumption of trial one week later. Defendant tried unsuccessfully to retain another experienced attorney, who told him that preparation would take at least four weeks. Trial resumed over the protest of both the defendant and the appointed partner. This court held that "the circumstances of this case did not justify the trial court's refusal to permit defendant to be represented by counsel of his own choice, and that therefore that refusal constituted a denial of due process of law." (*Ibid.*) Why? (1) The defendant made diligent efforts to retain experienced substitute counsel. (2) Continuance until original counsel could return would not have been unreasonable since defendant could then be tried with a codefendant. (3) Concerns about convenience of witnesses were unjustified.

In *People* v. *Byoune* (1966) 65 Cal.2d 345 [54 Cal.Rptr. 749, 420 P.2d 221] defendant was charged with grand theft; the public defender was appointed to represent him. Two months later, on the eve of trial, a count was added charging robbery. Defendant sought continuance to retain counsel with funds to be furnished by a relative. The request was denied; he was tried and convicted. The conviction was reversed for denial of continuance. The added charge justifed new assertion of the right to retain counsel, and no circumstances warranted "limitation of the right in the interests of efficient judicial administration." (*Id.,* at p. 348.)

*People* v. *Holland, supra,* 23 Cal.3d 77 held that defendant was deprived of his right to counsel when he was compelled to plead guilty or go to trial prior to enforcement of his adjudicated right to return of money seized on his arrest, which he had intended to use for retaining counsel. (See also *People* v. *Vermouth* (1974) 42 Cal.App.3d 353 [116 Cal.Rptr. 675].)

██ Here, defendant says he was denied his right to counsel by being denied a continuance to find a replacement for Sutton, who withdrew after

being retained to try the case. The Attorney General contends that defendant's chosen counsel was Watkins, who represented him from the time of arrest, who he agreed could remain his counsel when Sutton withdrew, and with whom there is no indication he had any disagreement.

Defendant's answer ("No") to the question whether he objected to Sutton's withdrawing and leaving Watkins as counsel of record is insufficient to nullify Watkins' showing in the motions that defendant had retained her not to try the case but to assist a more experienced trial attorney in that task. The arrangement was particularly appropriate in a capital case. (See Pen. Code, § 1095 ["If the offense charged is punishable with death, two counsel on each side may argue the cause"]; *People* v. *Jackson* (1980) 28 Cal.3d 264, 285-288 [168 Cal.Rptr. 603, 618 P.2d 149]; *Keenan* v. *Superior Court* (1982) 31 Cal.3d 424 [180 Cal.Rptr. 489, 640 P.2d 108].) Watkins presumably spoke for her client when she declared to the court her judgment that she was too inexperienced to take charge of defending him at trial and wished to obtain a replacement for Sutton. Thus in fact it seems clear she was not defendant's choice for trial counsel.

Even if defendant's wishes were not clear, Watkins' statements at least raised enough doubt to preclude the court's inferring, without investigation, that she was his choice as sole trial counsel. The Attorney General correctly points out that her professed shortcomings in themselves would not have barred defendant's relying solely on her for defense. (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65] [trial court erred in discharging defendant's chosen counsel for incompetency].) Most of her statements, however, were made outside the defendant's presence, either in chambers or in written motions. If the denial of continuance was based on unwillingness to accept counsel's representation of her client's preference for a substitute principal trial attorney, the court was required at least to ascertain that defendant's choice of Watkins was made with knowledge of the questions she had raised about her ability to provide representation. Such an inquiry, prescribed in *Pierce* v. *United States* (D.C. 1979) 402 A.2d 1237, seems indistinguishable in principle from examination to assure that a defendant who requests self-representation understands its pitfalls (*Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525]; *People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187]); and it is analogous to warning jointly represented codefendants to consider whether they have conflicting interests that would make separate representation desirable (*People* v. *Cook* (1975) 13 Cal.3d 663, 672, fn. 7 [119 Cal.Rptr. 500, 532 P.2d 148]). Absent that inquiry the court should have accepted Watkins' representation that her client had retained Sutton

because he wanted his trial to be handled by counsel more experienced than she, and that Sutton's withdrawal had left defendant without counsel of his choice.

Further, there was no showing to justify denying defendant a continuance to obtain counsel. It does not appear that either Sutton's withdrawal or Watkins' unwillingness to proceed alone stemmed from any desire to delay trial. (See *People* v. *Maddox* (1967) 67 Cal.2d 647, 655 [63 Cal.Rptr. 371, 433 P.2d 163] [disapproving claim of right to appear in propria persona made for purpose of delay]; rule 6-101(1), Rules Prof. Conduct [knowledge that one lacks skills may require associating another lawyer].) There was neither lack of diligence in seeking a replacement nor undue delay in apprising the court of the situation and seeking continuance. No prospect of possibly impairing efficient judicial administration appeared that was sufficient to overcome defendant's interest in obtaining counsel of his choice. As a matter of law there was "good cause" to grant continuance for that purpose. (Pen. Code, § 1050; *People* v. *Crovedi, supra,* 65 Cal.2d 199; *People* v. *Byoune, supra,* 65 Cal.2d 345.)

Deprivation of defendant's right to defend with counsel of his choice deprived him of due process and requires reversal regardless of whether in fact he had a fair trial. (*People* v. *Byoune, supra,* 65 Cal.2d 345 [reversing on that ground though it was undisputed that counsel conducted a competent defense]; *People* v. *Crovedi, supra,* 65 Cal.2d 199, 205.) Accordingly, the judgment is reversed.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.