Filed 10/29/13  P. v. Martin CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B240542 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA067561) |
| v. | |
| RICHARD MARTIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Beverly Reid O'Connell, Judge.  Affirmed.

Fay Arfa for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Richard Martin appeals from a judgment following his conviction for first degree residential burglary. He contends the trial court abused its discretion (1) when it denied his pretrial request to discharge his retained attorney and hire new counsel, (2) when it admitted evidence of a prior uncharged residential burglary, and (3) when it denied his request under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to strike his 2008 prior "strike" conviction for robbery. Finding no reversible error, we affirm.

## PROCEDURAL BACKGROUND

Appellant was charged with one count of first degree residential burglary (Pen. Code, § 459)[1] and one count of receiving stolen property (§ 496). It was further alleged that appellant had suffered five prior convictions (§ 1203, subd. (e)(4)), including a strike for purposes of the Three Strikes law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and had served five prior prison terms (§ 667.5, subd. (b)). Before a bifurcated jury trial commenced, appellant made an oral motion to discharge his privately retained counsel and hire new counsel. The trial court denied the motion. The jury found appellant guilty of first degree residential burglary, and split 10 to 2 for conviction on the count of receiving stolen property. The court declared a mistrial on that count.[2]

In a subsequent bench trial, appellant admitted the allegations on the priors. Appellant moved for a new trial (§ 1181), which was denied. The trial court also

---

[1]     All further statutory citations are to the Penal Code, unless otherwise indicated.

[2]     Because appellant was not convicted for receiving stolen property, we omit further facts related to that charge.

denied appellant's *Romero* motion, declining to strike the prior strike. However, the court exercised its discretion to strike the prior prison terms. The court sentenced appellant to state prison for a total of 13 years, and assessed various fines and fees. He was awarded 1080 days of custody credit. Appellant timely appealed.

## FACTUAL BACKGROUND

The prosecution presented the following case. On September 13, 2010, at approximately 2:00 p.m., the victim, Amanda Lozano, went with her four-year-old son to pick up her six-year-old son at a nearby school. Afterward, they walked home with a female neighbor and her daughter. As they approached Lozano's house, her sons ran ahead, stopped at the front door, and turned to look at her in surprise. When Lozano arrived at her house, she noticed her front door was open and the door frame was on the ground. While standing in the entryway, she observed two men coming down the stairs. One man wore red clothing, the other dark clothing. The men turned and looked at her. Lozano saw their faces. She told her children to run, and she ran down the street yelling, "Help me, help me, please. Someone's in my house." A neighbor came out, and they ran across the street to the house of Detective Adam Dorman, a Los Angeles County deputy sheriff. Lozano told the detective, "There are two thieves inside my house."

Detective Dorman ran to Lozano's house. He noticed the front door had been kicked in. Detective Dorman ran into the house, looked around, and went into the backyard. Looking over one of the walls in the backyard, he saw a man in a red shirt and dark shorts about 50 yards away. The suspect, who had tattooed legs and was carrying a backpack, was climbing over a fence. Detective Dorman lost sight of the suspect after he cleared the fence, so the detective ran back through the house to his patrol vehicle. Because he was familiar with the

3

neighborhood, he drove to a location that he thought would allow him to catch the suspect. Seeing appellant walking down the street with a "schmear" of dirt down his leg as if he had "slid down a hill," Detective Dorman stopped his vehicle, got out, identified himself as a deputy sheriff, drew his firearm and ordered appellant to the ground. Appellant failed to comply and kept walking toward the detective. Seeing a tire iron protruding from appellant's backpack, Dorman threatened to shoot, to which appellant replied, "Why? For breaking into a house?" Detective Dorman arrested appellant and removed several items from the backpack, including a tire iron and a jewelry box.

Lozano was driven to the location where appellant was being held in custody. From inside the patrol vehicle, Lozano turned around in her seat to look at appellant, immediately ducked down, said, "That's him," and began to sob. The items inside the backpack were shown to Lozano. Lozano identified the jewelry box as belonging to her. However, her husband's missing passport was not recovered. He found it days later on the other side of their backyard wall. At trial, she identified appellant as one of the two men she had seen in her house, the one wearing red clothing.

The prosecution also introduced evidence of prior uncharged misconduct. On December 18, 2006, Detective Brandon Painter went to Catherine Hewitt's home in response to a call. When he arrived, he observed that the front door appeared to have been "kicked in," and that the house had been completely ransacked. Later that night, Detective Painter conducted a traffic stop of appellant and searched appellant's person. He recovered a knife, two passports belonging to Hewitt and her deceased husband, and some coins. The passports were in appellant's pockets.

4

Appellant presented an alibi defense. Veronica Maximo and her daughter, Maria Elena Rodriguez, testified that they regularly cleaned appellant's house. On the day of the burglary, they were at his house from 11:30 a.m. until around 2:30 p.m. Appellant and his wife left to walk their dog around 1:30 p.m. While appellant was away, two men and a woman came to appellant's house looking for him. The men wore dark clothing, and one of them carried a backpack. When they learned that appellant was not present, they left. Appellant returned home at some point and around 2:20 p.m., helped Maximo pack her cleaning supplies into her car.

David Palmer was near Lozano's house at the time of the burglary. He heard screaming, and seconds later, saw two men jump over a wall and land on a dark hill. The men wore dark clothing and at least one of them was carrying a backpack. Palmer chased after the two men in his truck. He was able to detain one of the men, but the other man jumped a fence and ran away. He could not identify the other man, although he noticed a "flash of red."

## DISCUSSION

Appellant contends (1) that the trial court erred in denying his motion to discharge his privately retained counsel and retain new counsel; (2) that the court abused its discretion in admitting Detective Painter's testimony about the 2006 residential burglary; and (3) that the court erred in denying his *Romero* motion.

A.      Motion to Substitute Attorney

     1.      Relevant Background

The day before trial was scheduled to commence, appellant's retained counsel stated that she was not ready, as she had had "too many back to back trials." She acknowledged that she was not then in trial, but said she needed to prepare for future trials. The prosecutor noted that the case was over a year old

and was not complicated, but did not object to continuing the trial until the following Monday. In response, defense counsel stated she had "some outstanding discovery." Judge Gelfound refused to continue the case beyond the next day, stating, "This case is a year old. The court is not going to continue the case so both sides are going to need to be ready."

The parties appeared the next morning at 8:30 a.m. before Judge O'Connell. The prosecutor informed the court that appellant had previously rejected an offer which had since expired, but offered to explore the possibility of re-extending the offer. Defense counsel stated that appellant was seeking a "joint suspension" -- presumably a suspended state prison sentence -- which the court characterized as unrealistic. ("Not going to happen.") The court agreed to delay the trial for three hours to allow defense counsel to discuss appellant's options with him, and to give the prosecutor time to seek approval to re-extend the offer.

The parties reconvened at 11:30 a.m. The court informed them that a jury panel had been ordered. The court asked if a plea agreement had been reached. The prosecutor stated that appellant was seeking less time or suspended time, which was not a possibility. The court then informed appellant that he had three options: (1) accept the prosecution's 13-year offer, (2) accept an open plea, or (3) go to trial. Appellant responded that he could not take the prosecution's offer, stating, "I am an active member of my church. I play in a Christian band. I just recorded music. I have wonderful people in my background . . . that are going to bat for me . . . . I just found out that me and my beautiful wife are going to have a baby. It's not an option for me to go back to prison at this point." The court stated, "Then we're going to go to trial, sir." Appellant responded, "But if it's going to go to trial today, I can't let that happen without getting the proper things that we need." The court then noted that defense counsel was "very experienced"

and good at her job. The court observed that "[i]t sounds like you have some mitigation that you want to present at a sentencing hearing." Appellant replied that he was scared that he would not be in his baby's life. The court stated, "We are going to go to trial then. We are going to bring in the panel at 1:30. You are ordered to return at 1:30 p.m." Appellant then moved to relieve his counsel and retain new counsel because he was not "properly represented." The court denied the oral motion, finding it was a "delaying tactic" and noting that a jury panel had been ordered.

    2.    Analysis

Appellant contends he was denied his constitutional right to the assistance of counsel when the trial court refused to allow him to discharge his retained attorney and retain another private attorney. We disagree.

Under the Sixth Amendment of the federal constitution, a criminal defendant has the right to be represented by counsel at all critical stages of the prosecution. (*Faretta v. California* (1975) 422 U.S. 806, 818-819.) The right to effective assistance of counsel includes the right to appear with retained counsel of one's choice. (*People v. Gzikowski* (1982) 32 Cal.3d 580, 586 (*Gzikowski*).) That right is necessarily limited by the countervailing state interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "'"'"assembling the witnesses, lawyers, and jurors at the same place at the same time."'"'" (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 428 (*Keshishian*), quoting *People v. Ortiz* (1990) 51 Cal.3d 975, 983-984.) Accordingly, a court may deny a motion for a continuance to obtain new counsel if the motion is untimely, was made for the purpose of delaying trial, or would impair efficient judicial administration. (*Gzikowski*, *supra*, 32 Cal.3d at p. 586.)

Appellant's oral motion was untimely. It was made on the day of trial, just before jury selection, and would necessarily have delayed the trial and disrupted the orderly administration of justice. The case was over a year old and had already been continued numerous times. The judge, the prosecutor, and the witnesses were ready. Appellant did not claim to have retained new counsel -- much less counsel ready to begin trial. The court was not obliged to grant his request, made at the eleventh hour, when to do so would necessarily have required a continuance and interfered with the orderly administration of justice. (See *People v. Lau* (1986) 177 Cal.App.3d 473, 479 [trial court did not abuse its discretion in denying defendant's request to replace attorney made just before jury selection]; *Keshishian*, *supra*, 162 Cal.App.4th at p. 429 [no error in denying last-minute attempt to discharge counsel where request made on day of trial after case had been pending for over two years, appellant had neither identified nor retained new counsel, and witnesses had been scheduled]; see also *People v. Courts* (1985) 37 Cal.3d 784, 792, fn. 4 [citing cases where the lateness of continuance requests made on "the eve-of-trial, day-of-trial, and second-day-of-trial" was a significant factor justifying denial of motion].)

Moreover, the trial court's finding that appellant's effort to discharge counsel was, in fact, a "delaying tactic" was not unreasonable. Only when it became clear that the prosecution would not be offering appellant a plea disposition acceptable to him did he claim not to be "properly represented" by counsel. As the record before the court amply demonstrated, appellant was unhappy with the plea offer because the time in prison would take him away from his family, including an expected child. While his concern was understandable, it did not prevent the trial court from rationally concluding that appellant's principal

8

purpose in seeking to discharge his retained counsel was not to seek better representation but to postpone his trial.

Appellant's reliance on *People v. Frye* (1998) 18 Cal.4th 894 (*Frye*), overruled in part by *People v. Doolin* (2009) 45 Cal.4th 390, is misplaced. There, after noting that a trial court had broad discretion to deny a motion for a continuance, the Supreme Court affirmed the denial of a motion to "continue the penalty phase to allow treatment of defendant's medical condition, including his high anxiety and emotional distress." (*Frye*, at p. 1013.) The court determined "the trial court could reasonably infer that a postponement for treatment was not likely to result in any positive change in defendant's mental state." Because a continuance would not have been useful, the trial court acted within its discretion to deny the motion. (*Ibid*.) Similarly here, appellant informed the trial court of facts relevant primarily to mitigation during sentencing. When appellant sought a continuance, he did not articulate how new counsel would represent him better during the guilt phase. Thus, it was reasonable for the trial court to infer that appellant sought new counsel not to be "properly represented," but to postpone the day of reckoning. (See *Keshishian*, *supra*, 162 Cal.App.4th at p. 429 [defendant not entitled to discharge retained counsel in whom he had "'lost confidence'" when he had neither identified nor retained new counsel, and witnesses whose appearances had been scheduled would have been inconvenienced by further delay].)

*People v. Munoz* (2006) 138 Cal.App.4th 860 (*Munoz*), on which appellant also relies, is unavailing. There, the appellate court held that a motion to relieve privately retained counsel to retain new counsel to file a postconviction motion for a new trial was not untimely. The court found no disruption in the orderly process of justice, as newly appointed counsel could promptly determine whether to file the

9

motion and the trial court had delayed proceedings for five weeks after denying the substitution motion. (*Id*. at pp. 869-870.) *Munoz* is distinguishable because it occurred postconviction, after the jury had been discharged, when there was less urgency in the court proceedings. In contrast, here, a jury panel had been ordered and witnesses were ready to testify. Moreover, the *Munoz* court found the record "devoid of even a suggestion defendant had an interest in delay." (*Id*. at p. 870.) That is not the case here. In short, the trial court acted within its discretion in denying appellant's motion to discharge his counsel.

B.      Admission of Uncharged Prior Offense

        1.      Relevant Background

        Appellant contends the trial court abused its discretion in admitting Detective Painter's testimony about the 2006 residential burglary of Hewitt's house and his seizure of Hewitt's and her husband's passports from appellant's person hours later. The prosecution had sought to admit the evidence to show motive and a common design or plan. Defense counsel objected, arguing that a co-defendant had pled to the burglary, and that the features of the burglary were not unusual or distinctive. The prosecutor disagreed, arguing that taking passports was "slightly more unique" than taking cash or jewelry. She also argued that kicking in the door and leaving the door frame on the ground during a residential burglary was unusual. "Most people conceal it, put the door back, use a window not in the front or go through the back, not in a manner that's as blatant and open for individuals to see who are outside the house."

        After conducting an analysis under Evidence Code sections 352 and 1101, subdivision (b), the court admitted the evidence. It found the evidence was admissible to show motive or a common design or plan, as the kicking of the door and the theft of the passports were sufficiently similar and were common features

10

of the charged and uncharged offenses.  The court also noted that the 2006 offense was not "remote in time" or "cumulative" as to "require a mini trial," and was "probative of something other than propensity."  However, the court prohibited any testimony that appellant had been convicted of receiving stolen property or "hearsay statements from any victim."  It also informed defense counsel that it would entertain a limiting instruction.  Such an instruction was provided to the jury during trial and before deliberations.

2.     Analysis

Under Evidence Code section 1101, subdivision (b), a prior offense may be used to show "identity, common plan, and intent."  (*People v. Edwards* (2013) 57 Cal.4th 658, 710.)  There must be a "direct relationship between the prior offense and an element of the charged offense."  (*People v. Daniels* (1991) 52 Cal.3d 815, 857.)  In addition, the charged and uncharged offenses must be sufficiently similar.  The nature and degree of similarity depends upon the purpose of the admitted evidence.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403 (*Ewoldt*).)  "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent."  (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.)  "A greater degree of similarity is required in order to prove the existence of a common design or plan."  (*Ibid*.)  "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual"; rather, it "need only exist to support the inference that the defendant employed that plan in committing the charged offense."  (*Ewoldt*, at p. 403.)  "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity.  For identity to be established, the uncharged misconduct and the charged offense must share common features that

11

are sufficiently distinctive so as to support the inference that the same person committed both acts." (*Ibid*.) Finally, "[t]he probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Kipp* (1998) 18 Cal.4th 349, 371.) "On appeal, a trial court's resolution of these issues is reviewed for abuse of discretion. [Citation.]" (*Ibid*.)

As the Supreme Court explained, with respect to a common design or plan, "evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts." (*Ewoldt*, *supra*, 7 Cal.4th at p. 403.) The court warned, however, that "[o]ur holding does not mean that evidence of a defendant's similar uncharged acts that demonstrate the existence of a common design or plan will be admissible in all (or even most) criminal prosecutions." (*Id*. at p. 405.) "For example, in most prosecutions for crimes such as burglary and robbery, it is beyond dispute that the charged offense was committed by someone; the primary issue to be determined is whether the defendant was the perpetrator of that crime. Thus, in such circumstances, evidence that the defendant committed uncharged offenses that were sufficiently similar to the charged offense to demonstrate a common design or plan (but not sufficiently distinctive to establish identity) ordinarily would be inadmissible." (*Id*. at p. 406.)

Here, the prosecution sought to introduce appellant's connection to the 2006 burglary to show motive or a common plan. The court twice counseled the jury that it could consider the evidence solely for the limited purpose of deciding whether appellant had a motive to commit the charged offenses or a plan or

12

scheme for doing so. Neither consideration, however, was relevant to the case. There was no dispute as to the "motive" of the persons who entered Lozano's home, and the existence of a common plan was irrelevant to any material fact other than identity. Yet the prosecution did not ask the court to find the evidence from 2006 sufficiently distinctive to be admissible to show identity, and the court did not make such a finding. As our Supreme Court observed in *Ewoldt*, where the primary issue is identity and the evidence of prior acts is insufficiently distinctive to establish identity, evidence sufficient to show a common plan is ordinarily inadmissible. (*Ewoldt*, *supra*, 7 Cal.4th. at p. 406.)

Nevertheless, we conclude that any error in admitting evidence of the 2006 conduct was harmless under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (See *People v Malone* (1988) 47 Cal.3d 1, 22 [erroneous admission of prior misconduct harmless under *Watson*].) Evidence of appellant's guilt was established by both direct and circumstantial evidence from multiple independent sources, including appellant himself. Two percipient witnesses -- Lozano and Detective Dorman -- identified appellant from the scene of the crime. Lozano saw appellant's face as he was walking down the stairs of her home. Shortly thereafter, while her memory was still fresh, she identified him unequivocally as one of the intruders. Finally, she identified him at trial as the one wearing red clothing. Similarly, Detective Dorman identified appellant as the suspect he had seen fleeing Lozano's residence by climbing the backyard wall. The detective was close enough to observe that the man was wearing a red shirt and dark shorts, was carrying a backpack, and had tattooed legs. He was able to quickly locate appellant and detain him. In addition, when Detective Dorman told appellant to get down on the ground or he would shoot, appellant replied, "Why, for breaking into a house?" Finally, when appellant was apprehended, he was carrying a

13

backpack containing a jewelry box belonging to Lozano. On this record, it is not reasonably probable that a more favorable outcome would have resulted absent the admission of the evidence of the 2006 conduct. Accordingly, there was no reversible error.[3],[4]

C.   *Romero* Motion

    1.   Relevant Background

During sentencing, the prosecution read the victim's statement. The victim wrote that the burglary had "emotional[ly] devastate[ed] . . . our family, friends and neighbor. Since this was witnessed firsthand, our small children have this ingrained in their mind that even though the door is locked, we are not safe. We are robbed of the security we feel in our own home."

The court then heard from three individuals who supported appellant's *Romero* motion. They were personally familiar with appellant through his participation in various prison rehabilitation programs after he was arrested in this matter. Appellant's counsel noted there were other people "who are standing by if you wanted to talk to them by phone." Counsel argued that appellant had "quite a future" until "drugs took him down." Counsel asked the court to grant appellant probation because he was "doing spectacularly" and because appellant's personal transformation since he was jailed was "the kind of transformation that we kind of hope for and we seldom see."

---

[3]   For the same reasons, any error in admitting evidence of the prior uncharged residential burglary to show motive was harmless.

[4]   Appellant also summarily contends that the admission of the prior uncharged offenses violated his federal constitutional rights to due process and a fair trial. As appellant provides no further argument or explanation, he has forfeited this argument. (*People v. Stanley* (1995) 10 Cal.4th 764, 794.)

14

The prosecutor opposed the motion and recommended a 17-year sentence. She noted that appellant was on formal probation for three felony convictions when he committed the instant crime. She further noted that he had been given numerous opportunities for rehabilitation following the prior convictions, including a drug program which he failed to complete. After listening to appellant's statement, the trial court stated, "Mr. Martin, you speak of a little baby coming and you want to change for a little baby. I remember the victim who sat here and testified that her little babies were at the door when you ran out of their house and how that has affected them." The court noted that appellant had two felony convictions in 2006, for stealing a car and receiving stolen property, and two felony convictions in 2008, for robbery and receiving stolen property. It further noted that appellant had received probation and drug treatment, but that he continued to commit additional crimes. The court stated, "[I]t's time for you to accept the responsibility for the crime which you've been convicted of." The court denied the *Romero* motion, but exercised its discretion to strike the five prior prison terms. It sentenced appellant to 13 years in custody.

2.     Analysis

Appellant contends the trial court abused its discretion in denying his *Romero* motion to strike his prior "strike" -- his 2008 robbery conviction. In ruling on a defendant's *Romero* motion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the . . . spirit [of the Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) Because the Three Strikes law

15

"establishes a sentencing norm" and "carefully circumscribes the trial court's power to depart from this norm [by] requir[ing] the court to explicitly justify its decision to do so," "the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Ibid.*) "'[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*Ibid.*, quoting *People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Here, the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the Three Strikes law. Appellant's present conviction involved breaking into a house where a mother and two young children resided. The crime traumatized the victim and her children. Appellant's criminal history included five prior felony convictions, one involving the use of a knife and a threat of violence to the victim. Significantly, defendant had been given numerous opportunities to rehabilitate himself. Yet he committed the robbery constituting his strike less than a year after sustaining three felony convictions, and despite receiving a suspended prison sentence and probation. He committed the instant offense while on parole. To the extent appellant's drug addiction contributed to his criminal behavior, he failed to avail himself of programs to help him overcome it. As the trial court observed, the courts had "taken a chance" on appellant for years, but he kept "commit[ting] additional crimes." It cannot be said that appellant fell outside the spirit of the Three Strikes

16

law.  Accordingly, the court acted within its discretion in denying appellant's *Romero* motion.[5]

## DISPOSITION

The judgment of conviction is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

SUZUKAWA, J.

---

[5] Appellant summarily contends that the denial of the *Romero* motion violated his federal constitutional rights to due process and to a reliable sentence under the Fifth, Sixth, Eighth and 14th Amendments of the United States Constitution.  As appellant provides no further argument or explanation, he has forfeited this argument.  (*People v. Stanley*, *supra*, 10 Cal.4th at p. 794.)