Filed 6/9/15  P. v. Burns CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C075877 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF13702) |
| v. | |
| DALE WAYNE BURNS, | |
| Defendant and Appellant. | |

Defendant Dale Wayne Burns was charged with assault and battery for hitting a medical care worker.  Defendant chose to represent himself, but at the prehearing conference, the trial court expressed a doubt as to his competency and appointed counsel over his request for a continuance to retain private counsel.  Defendant was found incompetent based on a doctor's report.  At the placement hearing, the trial court denied defendant's request for a continuance so private counsel he had retained could appear.  Defendant made an outburst and was removed from the courtroom.  The trial court then

1

ordered defendant placed at Napa State Hospital and authorized involuntary administration of antipsychotic medication.

On appeal, defendant contends the trial court erred by denying: his right to counsel of his choice, his request for a continuance for the assistance of retained counsel, and his right to be present in the courtroom during the placement hearing. Defendant also contends that the trial court's findings of incompetence and the order of involuntary administration of antipsychotic medication were not supported by substantial evidence.

We affirm the finding that defendant was incompetent to stand trial, but we reverse the trial court's denial of defendant's request for a continuance to have retained counsel of choice present at the placement hearing, and we remand for a new placement hearing. In light of this disposition, defendant's remaining arguments are moot.

FACTUAL AND PROCEDURAL BACKGROUND

On November 23, 2013, while defendant was under restraint at a hospital, he broke free of his arm restraint and punched a medical worker, breaking the worker's nose. He was charged with assault and battery. Based on his distrust of public defenders, defendant timely filed a *Faretta*[1] waiver. On December 4, 2013, the court acknowledged his request and allowed him to represent himself. Defendant was remanded and bail was set at $80,000.

During the subsequent two weeks, defendant filed approximately 20 handwritten motions, which included requests to be released on his own recognizance based on community ties, requests for funds for supplies and a private investigator, and requests for the dismissal of his charges based on his incompetence at the time of the offense.

At defendant's prehearing conference, on December 18, 2013, the court declared a doubt as to his competence "given [the] content of [his] letters and [his] mental health

---

[1] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].

2

history." The court revoked defendant's right to self-representation and appointed Brian Davis, a public defender, to represent him. Defendant asked the court, "if you're going to declare a doubt . . . , I'd like a 30-day continuance, continued automatically, so I can hire David Vasquez or [Arturo] Marquez." The trial court responded, "I've declared a doubt of defendant's competency. Criminal proceedings are suspended. Nothing further is going to be done . . . . [¶] [A] person who is not competent to stand trial and has significant mental health issues cannot represent [himself]." The trial court then ordered defendant to be examined by Dr. Daisy Switzer, a psychologist. Defendant asked if a second report could be done by his own doctor, but the trial court did not entertain his request and told him to talk with his attorney (Davis).

On January 2, 2014, Dr. Switzer interviewed defendant in custody. According to her report, defendant understood the charges against him, but he was psychotic and would not be able to assist in his defense because of his impaired ability to focus and sort relevant from extraneous information. She also reported defendant had grandiose delusions, a long history of substance abuse, and met the criteria for antisocial personality disorder.

On January 10, 2014, a competency hearing was held. Defendant's attorney (Davis) told the court that despite his readiness to submit, defendant wanted a second doctor to evaluate him and an attorney present during the evaluation. Because neither the attorneys nor the court knew whether defendant was entitled to such things, the court suggested the matter be trailed. His attorney (Davis) asked to speak with defendant and after discussion informed the court defendant would withdraw his requests and submit on Dr. Switzer's report. Based on that report, the court declared defendant incompetent to stand trial and ordered a report from Rick Bingham, a licensed marriage and family therapist, and J. S. Zil, M.D., regarding local treatment.

Bingham interviewed defendant at the Yuba County Jail with Davis present. Defendant brought paperwork to the interview that he claimed contradicted Dr. Switzer's

3

conclusions about his delusional beliefs. Near the end of the interview, defendant told Bingham that he had been told he would be treated locally, but Bingham informed defendant that the majority of individuals in this situation are treated at Napa State Hospital. At that point, defendant no longer wished to share the paperwork with Bingham and advised Davis he was hiring a private attorney to get a second opinion regarding his competence.

Bingham recommended that defendant be placed at Napa State Hospital. He reported that based on defendant's charges, defendant might pose a danger to the health and safety of others while on outpatient status and his substance abuse would likely preclude him from cooperating with treatment. Attached to Bingham's report was a medication recommendation report from Dr. Zil, which contained a series of check marks on a standardized form indicating defendant met the criteria for involuntary administration of antipsychotic medication.

On January 31, 2014, at the placement hearing, Davis informed the court that defendant requested a continuance because he had retained David Nelson as private counsel. Nelson was in a jury trial, but Marquez was present to appear on his behalf to request the continuance. The court denied the continuance, referencing defendant's grandiose delusions. In response, defendant blurted out, "Your Honor, all that shit that you just said is fucking true. All that fucking shit is true." Without a warning, the trial court had defendant removed from the courtroom.

After defendant was removed, Marquez requested a two-week continuance for Nelson to prepare. The trial court denied the request because defendant was mentally ill, violent, and could not be treated locally. Marquez then requested a one-week continuance, which the court also denied. The court said Nelson could substitute in when criminal proceedings were reinstated. The court ordered defendant committed to Napa State Hospital and authorized involuntary administration of antipsychotic medications per Dr. Zil's report.

4

This timely appeal followed.

## DISCUSSION

Defendant makes five contentions on appeal. Defendant contends there was no substantial evidence to support the trial court's finding of incompetence. We disagree. Defendant also contends the trial court abused its discretion in denying his request for a continuance at the placement hearing to have counsel he had already retained present. We agree. Because we conclude defendant's placement hearing should have been continued so his retained counsel could represent him at that hearing, and thus the hearing will have to be conducted again, defendant's next two contentions -- that the trial court violated his constitutional rights by removing him from the courtroom during the placement hearing and that the order to authorize involuntary antipsychotic medication made at that hearing was not supported by substantial evidence -- are moot.

Defendant's final contention is the trial court denied him his right to counsel of choice. While the trial court never explicitly denied defendant the right to have Nelson as retained counsel, we understand defendant to argue that by denying defendant's request for a continuance so that Nelson could appear for him at the placement hearing, the court effectively denied him his right to counsel of choice at that hearing. Because we conclude the trial court erred in denying the requested continuance, our resolution of that issue necessarily resolves defendant's related contention that he was denied the right to counsel of choice.

I

*Competency To Stand Trial*

Defendant contends insufficient evidence supported the trial court's finding he was incompetent to stand trial. Quoting *People v. Ramos* (2004) 34 Cal.4th 494, 508, defendant argues " '[he] must exhibit more than bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has little bearing on the question of whether [he] can assist his defense counsel.' " He further contends his actions during the

5

current proceedings demonstrated he is not incompetent because at the prehearing conference he competently requested a 30-day continuance to retain private counsel and a second doctor's opinion. Then he consulted with court-appointed counsel and withdrew his requests and submitted on the matter. Also, after Bingham's placement recommendation, he retained and cooperated with private counsel.

A criminal defendant may not be tried or convicted " ' "if he . . . lacks ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- [or lacks] . . . a rational as well as a factual understanding of the proceedings against him." ' " ' " (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 464.)

We agree that a defendant must exhibit more than bizarre behavior or a preexisting condition (*People v. Ramos*, *supra*, 34 Cal.4th at p. 508), but " '[i]f a qualified mental health expert who has examined the defendant " 'states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel,' " that is substantial evidence of incompetence' " (*People v. Sattiewhite*, *supra*, 59 Cal.4th at p. 465).

Here, the trial court found defendant incompetent based on Dr. Switzer's report. Defendant had the opportunity to review the report with counsel and ultimately submitted on its contents, as did the prosecutor. In her report, Dr. Switzer described bizarre, paranoid behavior such as pressured speech, and grand delusions and took note of defendant's preexisting bi-polar disorder. Dr. Switzer ultimately reported defendant's condition affected whether he could assist his defense counsel (see *People v. Ramos*, *supra*, 34 Cal.4th at p. 508) because "although [defendant knew] his charges, it [wa]s apparent he [wa]s psychotic and that he [could not] consult rationally either with an attorney or with the court." She also said "[defendant appeared] to have the intelligence to [represent himself, but] he d[id] not have the ability to remain on task during

prolonged questioning" and was "unable to sort relevant information from extraneous information."

We conclude Dr. Switzer's examination of defendant and statement that he was incapable of assisting in his defense or cooperating with counsel is substantial evidence to support the trial court's finding of incompetence. (*People v. Sattiewhite*, *supra*, 59 Cal.4th at p. 465.)

## II

### *Denial Of Continuance*

Defendant contends the denial of a continuance for retained counsel to appear at the placement hearing deprived him of his due process rights. Defendant argues that a short continuance would not have significantly inconvenienced the court or the parties and he did not unduly delay in informing the court that he would be seeking a continuance. Defendant cites to *People v. Courts* (1985) 37 Cal.3d 784, which states that " 'chosen representation is the preferred representation. Defendant's confidence in his lawyer is vital to his defense. His right to decide for himself who best can conduct the case must be respected whenever feasible' " "even when a byproduct of a concrete and timely assertion of that right is some disruption in the process." (*Id.* at pp. 795, 798.) We agree.

Due process secures the right of a criminal defendant to appear and defend with retained counsel of his or her own choice. (*People v. Crovedi* (1966) 65 Cal.2d 199, 206.) This right is not absolute. (*Id.* at p. 207.) A defendant must act with diligence to retain private counsel because "[a] continuance may be denied if [he] is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily desires to substitute counsel at the time of the trial.' " (*People v. Court*, *supra*, 37 Cal.3d at pp. 790-791.) "[T]his right . . . must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case." (*People v. Byoune*

(1966) 65 Cal.2d 345, 346.)  The decision to grant a continuance is within the sound discretion of the trial court.  (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

The People contend defendant's request for a two-week continuance was an unreasonable delay of the administration of justice; defendant was acting in an agitated and threatening manner; defendant did not have a right to counsel who was unavailable; and the continuance would not have been useful because there were no other alternatives available for placement.  We address the People's arguments in turn.

Here, defendant was not dilatory in retention of counsel nor was his desire to hire counsel an arbitrary decision made at the time of trial.  (*People v. Courts*, *supra*,  37 Cal.3d at pp. 790-791.)  In fact, defendant was consistent and specific in his requests for and retention of private counsel.  When defendant's right to represent himself was first revoked, he asked for a 30-day continuance to hire Marquez, but the trial court brushed off his request and appointed Davis.  While initially cooperative with Davis, upon learning at the placement interview that he risked commitment at Napa State Hospital instead of local treatment, defendant advised Davis he was hiring private counsel to get a second opinion regarding his competency.  Marquez was present at the next hearing to appear for already retained counsel, Nelson.  In short, after realizing the true possible ramifications of the competency and placement hearings, defendant wanted to retain private counsel and diligently sought to do so.

Defendant's prompt retention of Nelson after learning he could be committed to Napa State Hospital distinguishes this case from cases in which continuances were denied because the defendants unreasonably delayed in hiring counsel or arbitrarily chose to substitute counsel at the last minute.  (See *People v. Jeffers* (1987) 188 Cal.App.3d 840, 851 [failed to substitute counsel during the five months prior to trial]; *People v. Blake* (1980) 105 Cal.App.3d 619, 624 [failed to hire counsel until second day of trial despite three previous continuances and being out on bail for some period of time prior to trial].)

In its denial of a continuance to allow Nelson to appear for defendant, the trial court emphasized defendant's mental illness, need for treatment, and violent behavior, particularly his "violent outbursts" and threats to a probation officer. The court was willing to continue the hearing until that afternoon but would not continue to keep defendant at Yuba County Jail when he needed to go to Napa State Hospital. Given the short length of time requested (two weeks and then one week) and the substantial rights at stake (see *People v. Fisher* (2009) 172 Cal.App.4th 1006, 1012-1017 [involuntary commitment and involuntary administration of medication result in a substantial loss of liberty] ), we conclude the trial court's " 'insistence upon expeditiousness' " despite defendant's justified request was unreasonable. (*People v. Courts*, *supra*, 37 Cal.3d at p. 791.) Dr. Switzer, Bingham, and Dr. Zil reported defendant suffered from a mental illness and required treatment, but none of their reports suggested such a need for immediacy that a one-week delay in such treatment would be unreasonable. Also, while the prosecutor informed the court that defendant was making threats to a probation officer, no admissible evidence of such threats was provided. Moreover, nothing in the record indicates defendant, who was incarcerated, posed any actual danger to the probation officer.

The trial court also found Nelson's absence an additional ground for its denial, stating "[Mr. Nelson] is not here. He's in trial. We're proceeding today." In support of this decision, the People argue under *United States v. Barrentine* (5th Cir. 1979) 591 F.2d 1069 that defendant "had no constitutional right to a new counsel of [his] choice who was unavailable, particularly in view of the problems inherent in a trial of this nature." (*Id.* at p. 1075.) In *Barrentine,* the Smiths, defendants, made a request for a one-week continuance on the day of trial because their attorney was in another trial. (*Id.* at pp. 1073, 1074.) The trial court denied the motion because the 16 other defendants and 47 witnesses were ready to proceed, capable counsel from the Smiths' retained counsel's firm was available, and "the Smiths made a calculated attempt to force a continuance"

9

after having been warned the week before no such continuance would be allowed. (*Id.* at pp. 1071, 1074-1075.) Here, the same problems are not present. This is a single defendant hearing, not a complex, large-scale case or a situation where witnesses or other parties would be inconvenienced. Moreover, "trial courts have the responsibility to protect a financially able individual's right to appear and defend with counsel of his own choosing [and give defendant] 'a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth.' " (*People v. Courts*, *supra*, 37 Cal.3d at p. 790.)

Finally, we address the People's argument that a continuance would not have been useful. (*People v. Frye* (1998) 18 Cal.4th 894, 1013.) "In *Frye,* [our Supreme Court] upheld the . . . denial of a midtrial open-ended continuance [for defendant to] seek [mental health treatment], reasoning that the trial court could have reasonably inferred that a continuance 'was not likely to result in any positive change in [the] defendant's mental state.' " (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118 [affirming denial of continuance because counsel suffered a heart attack and was unlikely to return to trial work in the near future or at all].) Here, defendant did not make an open-ended request for something that might never come to fruition like the requests in *Frye* and *Mungia*. (*Frye*, at p. 1013; *Mungia*, at p. 1118.)

For the foregoing reasons, reversal is required. (*People v. Courts*, *supra*, 37 Cal.3d at p. 796; *People v. Gzikowski* (1982) 32 Cal.3d 580, 589; *People v. Byoune, supra*, 65 Cal.2d at pp. 345-346; *People v. Crovedi, supra*, 65 Cal.2d at p. 205.) Because a new placement hearing will have to be held, defendant's arguments regarding his removal from the first placement hearing and the order for involuntary medication made at that hearing are moot.

DISPOSITION

The finding that defendant was incompetent to stand trial is affirmed, but the trial court's denial of defendant's request for a continuance to have retained counsel present at the placement hearing is reversed, and the case is remanded for a new placement hearing.

       ROBIE       , J.


We concur:


     NICHOLSON   , Acting P. J.


     MAURO     , J.