Filed 6/27/22  P. v. Dearman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>RYAN ALAN DEARMAN,<br><br>        Defendant and Appellant. | C093195<br><br>(Super. Ct. Nos. CR603212,<br>CR61817) |

Defendant Ryan Alan Dearman appeals from the judgment terminating his probation in two cases following a contested probation revocation hearing held concurrently with the preliminary examination in a third case.

Defendant contends the trial court abused its discretion and violated his right to due process by denying his request to make an oral motion to continue his probation revocation hearing to secure the attendance of a vital defense eyewitness.  He argues he suffered prejudice as a result of the error and therefore the judgment must be reversed.  We agree.

We conclude the trial court abused its discretion by denying defendant's request to make an oral motion for a continuance.  We further conclude the error prejudiced

1

defendant because there was good cause to justify granting a continuance and it is reasonably probable a result more favorable to the defendant would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837.) We thus reverse the orders revoking and terminating defendant's probation, vacate the resulting sentence, and remand the matter to the trial court for a new probation revocation hearing and further proceedings as necessary.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2019, a jury found defendant guilty of dissuading a witness and battery of a cohabitant in case No. CR60321-2 (battery case). On January 21, 2020,[1] the trial court placed defendant on formal probation for three years. In March, the prosecution filed a complaint against defendant in case No. CR61817 (firearm case) along with a petition to revoke defendant's probation after defendant was found in possession of a firearm. Defendant subsequently pled no contest to one count of possession of a firearm by a felon in the firearm case and the trial court found him in violation of the terms of his probation in the battery case. On May 12, defendant was again granted probation for three years.

On August 6, the prosecution filed a petition to revoke defendant's probation in the battery and firearm cases due to an alleged altercation between defendant and his ex-girlfriend, Brenda F. That same day, the prosecution filed a complaint in case No. CR62118 (domestic violence case), charging defendant with causing corporal injury to a cohabitant and disobeying a domestic relations order.[2] On September 1, defendant was

---

[1]    All further date references are to 2020 unless otherwise specified.

[2]    In the battery case, defendant was ordered to not annoy, harass, molest, attack, strike, or sexually batter Brenda F. -- the same alleged victim in the domestic violence case.

2

arraigned on the petition to revoke probation in the battery and firearm cases and the charges in the domestic violence case.

On September 15, the trial court set the preliminary examination in the domestic violence case and the probation revocation hearing in the battery and firearm cases to be heard concurrently on October 8. We hereafter refer to the joint hearing as the contested hearing.

Prior to the contested hearing, defendant sought to represent himself, in pro. per., for purposes of the contested hearing. After extensive waivers and advisements, the trial court accepted a written *Faretta* waiver signed by defendant and granted his request to represent himself. (See *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].) Specifically, defendant was advised, "as your own attorney, you will be expected to support yourself in accordance with all rules of conduct, and you are also expected to follow all rules of procedure and evidence. . . ." The trial court appointed an attorney as standby counsel for defendant.

The contested hearing was held on October 8. At the contested hearing, defendant confirmed he still wished to represent himself. At the outset, defendant informed the trial court he subpoenaed three witnesses, however one of his witnesses was not present; the trial court deferred addressing the matter. The trial court next reviewed various documents filed by defendant, rejecting most of them. Following a discussion of one such document -- a discovery request -- the trial court admonished defendant: "Mr. Dearman, I have repeatedly, over the course of these files, given you admonitions about how you have to meet the same standard as a practiced attorney. I have told you I can give you no favors. I have warned you that you would have to follow the same evidentiary rules and filing requirements as any licensed attorney. You have repeatedly informed me that you are capable of doing this, that you want to do this, and you do not want a lawyer to help you."

After addressing defendant's proposed filings, the trial court asked defendant whether he had any additional matters he would like to address, to which defendant responded, "Yes. One of my witnesses is not here." Defendant had subpoenaed three witnesses: Brenda, Stephen P., and Larry D.; however, Larry, defendant's brother, was not present. In reviewing the validity of defendant's subpoenas, the following colloquy took place:[3]

"[COURT]: Mr. Dearman, a defendant is not allowed to sign and serve his own subpoena. So there's nothing I can do about this subpoena. It's not valid -- it's not valid because you're the person who served it.

"[DEFENDANT]: Regardless if it's valid, does it make any issue that he was a witness and he's not available here?

"[COURT]: You would have had to file a motion showing me why I should continue this motion for lack of a witness, and I didn't receive anything like that.

"[DEFENDANT]: Can I do it orally?

"[COURT]: No.

"[DEFENDANT]: So you're going to proceed without all the witnesses available?

"[COURT]: The other two subpoenas that the Court was given . . . to a person named Stephen . . . and Brenda. Now, both of them are present in the courtroom. And these subpoenas were not even signed on the back as being served, so they can't get filed in in any event. . . .

"[DEFENDANT]: Ma'am, I was under the impression that the Court was -- was going to deliver them, actually, because I'm not -- obviously not allowed to deliver them to Brenda . . . .

---

[3] The People incorrectly assert, "all the [defendant's] subpoenas were not signed on the back as being served." As to the subpoena for the unavailable witness, Larry, the subpoena had, in fact, been signed and served *by defendant* -- resulting in the trial court finding the subpoena legally invalid.

"[COURT]: It's your job to figure out how to serve subpoenas. It's not the Court's job. There certainly was nothing in the documents that indicated that you thought that anybody in my court, including me, was going to go out and serve your witnesses today. Again, Mr. Dearman, these are matters for which you could have inquired with any attorney. You have consistently refused. Again, it's your right to act as your own attorney. You have that perfect right. And as I have said repeatedly, though, I can't help you."

Having concluded defendant's subpoenas were invalid and denying his request to make an oral motion for a continuance, the trial court proceeded with the contested hearing.

After discussing the allegations, the trial court asked the parties if they were ready to proceed. Defendant again maintained an eyewitness vital to his defense was not present. In response, the trial court explained, "lacking a properly served subpoena, we will move forward." Defendant argued he was entitled to have all of his witnesses present at the hearing under article I, section 16, of the California Constitution. The trial court replied defendant would have the opportunity to cross-examine the prosecution's witnesses and that it planned to move forward.

Three witnesses testified at the contested hearing: Colusa County Sergeant Jacob Parker, Brenda, and Stephen.

Sergeant Parker testified he was dispatched to the hospital at around 6:02 p.m. on July 16, to speak with Brenda about an alleged assault. He observed multiple abrasions and contusions on Brenda's arms, neck, and face, as well as "popped" blood vessels in her eye. The photographs Sergeant Parker took of Brenda's injuries were admitted into evidence. During his interview with Brenda, Brenda told him that she and defendant had gotten into a verbal argument at approximately 2:00 p.m. on July 16, and the argument escalated when he physically assaulted her, punching her multiple times in the face and neck, and threatening further assault if she did not remain in her bedroom. Brenda said

5

the altercation occurred in her bedroom at their shared residence. Brenda further reported she and defendant had consumed alcohol throughout the day leading up to the incident. Sergeant Parker testified Brenda did not appear to be under the influence when he spoke with her at the hospital. He explained he had had previous encounters with Brenda and was familiar with her general demeanor and appearance, and she appeared sober when he spoke to her.

After speaking with Brenda at the hospital, Sergeant Parker went to the apartment Brenda shared with defendant. Upon his arrival, he contacted another police officer who assisted in searching the residence. Sergeant Parker noted the front door of the residence was left open, and nobody was inside the residence or around the surrounding buildings. He explained, "As you enter the residence, [Brenda's] bedroom is the first bedroom on the left, which is to the north as you enter the residence. As you come into the residence, there was a lot of broken beer bottles on the ground, a couch was overturned, and it was pretty messy on the inside." He stated the condition of the residence appeared consistent with a scuffle.

Brenda testified she and defendant were roommates in July and had been living together for six years. She and defendant had previously been in a romantic relationship, but were no longer romantically involved at the time of the contested hearing. She testified, around 8:00 a.m. on July 16, she was alone at their shared residence when she started drinking alcohol. She drank a pint of whiskey and several bottles of beer throughout the day, but denied drinking with defendant. She testified she last saw defendant around 8:00 a.m. on that day and was taken to the hospital by a friend sometime thereafter.

Brenda explained, "I -- I was in pain, and I didn't know why because I was intoxicated pretty -- pretty good. I'm surprised I didn't black out. But my friend just said that, 'You need to go to the hospital. You don't look good.' " She testified she spoke with Sergeant Parker on July 16 but, because she was heavily intoxicated, she could not

recall where the meeting took place or any of the details of their conversation. When questioned about her prior statements to Sergeant Parker and hospital staff that she was physically assaulted and threatened by defendant, she stated she could not recall making such statements.[4] Brenda was shown numerous photographs taken by Sergeant Parker at the hospital, showing the various injuries she had sustained to her head and face. She admitted she had not sustained the injuries shown in the photographs prior to July 16, but repeatedly maintained she could not recall how she became injured because she was very intoxicated. She testified she could not recall arguing with defendant or being assaulted by him. She believed she must have sustained her injuries sometime after last seeing defendant around 8:00 a.m. on July 16.

During cross-examination, Brenda was questioned about documents she had mailed to defendant, which included a handwritten declaration she had signed and dated September 22. Defendant requested to admit the documents into evidence, however the trial court deferred ruling on the issue of admissibility and directed defendant to proceed with authenticating the documents. After authenticating the documents, Brenda testified her statements contained in the declaration that defendant did not touch her on July 16 and that she wanted the charges against defendant dropped were true. She further testified she did not recall seeing Stephen and Larry on July 16. On redirect examination, Brenda denied speaking with defendant at any time from July 16 to the date of the contested hearing. She further denied speaking with defendant about the contents of her declaration. The prosecution confronted Brenda with the inconsistencies in her testimony at the contested hearing and her statements contained in the handwritten declaration, as she had testified during cross-examination she did not see Larry and Stephen on July 16, whereas she declared in the written declaration defendant had left with them on the date

---

[4]     The prosecution introduced no evidence regarding statements Brenda allegedly made to hospital staff.

in question. In response, Brenda admitted she did not actually see defendant leave with Stephen and Larry on July 16, but rather presumed he had left with them because he was working with Stephen and Larry at that time. She later testified she was intoxicated at the time she wrote the September 22 declaration.

Stephen testified he and Larry picked defendant up for work between 12:00 p.m. and 1:00 p.m. on July 16. When they arrived at defendant's residence, he saw Brenda standing outside with a beer, appearing very intoxicated, but he did not observe defendant drinking alcohol. He maintained, when he saw Brenda on July 16, she did not have any injuries, nor did he observe defendant touch her. Stephen testified he, Larry, and defendant left to the Bay Area for work, and he was with defendant until around 6:00 p.m. or 7:00 p.m. that day.

During cross-examination, Stephen testified he had known defendant for over one year and regularly worked with defendant and Larry, fixing homes. He explained Larry or defendant coordinated their work projects and usually notified him of work the day prior. Stephen, however, could not recall the specific details about the work they did on July 16 because they often did multiple projects per day. Stephen acknowledged defendant asked him to testify about what occurred on July 16, but denied discussing any specifics about his anticipated testimony with defendant. He was questioned at length about how he could be certain his testimony about what occurred on July 16 did not actually occur on a different day, if he did not speak with defendant about his anticipated testimony. Stephen testified he knew his testimony pertained to what occurred on July 16 because that was the only day he observed Brenda intoxicated, i.e., when he saw her on other days, she appeared sober.

After Stephen's testimony concluded, the trial court asked defendant whether he had any additional witnesses. Defendant asked to recall Brenda and stated his only other witness could not be at the hearing. Brenda was briefly recalled, however, the trial court

8

deemed defendant's line of questioning irrelevant and she was dismissed. No further testimony was presented by the parties.

Before closing arguments, the trial court revisited defendant's request to admit into evidence the handwritten declaration signed by Brenda. The prosecution objected that the document constituted inadmissible hearsay. Defendant responded, "I don't understand what makes it hearsay when she -- she said she wrote it." The trial court declined to explain the legal rules further and sustained the prosecution's objection, informing defendant the document would not be admitted into evidence. The prosecution then proceeded with closing arguments.

The prosecution argued Brenda's statements to Sergeant Parker at the hospital on July 16, the photographs of her injuries on that date, and the condition of Brenda's and defendant's shared residence proved, by a preponderance of the evidence, defendant had violated the terms of his probation in the battery and firearm cases by failing to obey all laws. The prosecution further argued the evidence was sufficient to meet the standard required to hold defendant to answer for the charges alleged in the domestic violence case. In contrast, defendant argued the testimony of multiple witnesses showed he was not present at the shared residence when Brenda allegedly sustained her injuries, and therefore he could not have assaulted Brenda.

In announcing its ruling, the trial court called into question the credibility of Brenda and Stephen, stating, "There are issues of credibility with regards to both [Brenda] and [Stephen]. [Stephen] is very vague and has selective recall as far as the date in question. And when pressed, he really was pretty vague as to whether that was, in fact, the exact date. He may have been at the house on some date in July when [Brenda] was very drunk and they left at noon, but I cannot see that what he testified to was, in fact, I believe, July 16th. All the other evidence from credible sources at the hospital and the officer are to the contrary. And [Brenda] seems to have very selective recall, and I -- she doesn't recall very much of anything, so her testimony today needs to be looked at in

9

spite of what she said on the date of the offense near to the time of the event, and that was what was heard."[5]

After finding the evidence sufficient to meet the applicable standards, the trial court held defendant to answer for the charges alleged in the domestic violence case and found defendant had violated the terms of his probation in the battery and firearm cases. As a consequence, the trial court revoked and terminated defendant's probation in the battery and firearm cases and sentenced defendant to an aggregate term of three years in prison; the domestic violence case was subsequently dismissed.[6]

## DISCUSSION

Defendant contends the trial court abused its discretion by denying his request to make an oral motion to continue his contested hearing to secure the attendance of an eyewitness without first holding a hearing to determine whether there was good cause justifying the motion. The People argue the trial court did not abuse its discretion, as defendant failed to demonstrate due diligence in securing Larry's attendance, and failed to show Larry's testimony was material and not cumulative, and that a continuance likely would have resulted in the production of testimony or evidence in support of the defense. We disagree with the People and conclude the trial court abused its discretion in denying defendant's request to make an oral motion for a continuance and further conclude defendant was prejudiced by this error.

---

[5] The only evidence located in the record pertaining to "sources at the hospital" were two questions and answers during Brenda's direct examination when the prosecution asked (1) whether she spoke with "nurses and st[a]ff" at the hospital, to which Brenda responded, "[y]es," and (2) whether she recalled telling hospital staff she had been physically assaulted and threatened by defendant, to which Brenda responded, "no."

[6] The trial court granted the prosecution's motion to dismiss the domestic violence case, which was made on the basis of the three-year prison sentence defendant received in the battery and firearm cases.

10

We review the denial of defendant's request to continue the contested hearing for abuse of discretion. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) Abuse of discretion arises, pertinent to this appeal, where the trial court was unaware of or misunderstood the scope of its discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 378; *People v. Lee* (2017) 16 Cal.App.5th 861, 866.) The denial of a continuance will not be reversed on appeal absent a clear showing of abuse of discretion *and* prejudice to the defendant. (*People v. Samayoa* (1997) 15 Cal.4th 795, 840.)

Continuances in criminal cases are generally disfavored. (Pen. Code,[7] § 1050, subd. (a).) To continue a hearing in a criminal proceeding, section 1050, subdivision (b), requires the defendant file a written notice "at least two court days before the hearing sought to be continued." Section 1050, subdivision (c), however, allows a defendant to make a motion notwithstanding subdivision (b) upon a showing of good cause. In circumstances where the defendant fails to comply with the two-day written notice requirement, the trial court must determine: (1) whether good cause exists for the defendant's failure to give proper notice, and (2) whether good cause exists to continue the hearing. (§ 1050, subds. (d), (f); *People v. Harvey* (1987) 193 Cal.App.3d 767, 771 [a continuance may be denied if no good cause for failure to give notice, even if there is good cause for the continuance].)

At the start of the contested hearing, defendant informed the trial court an eyewitness vital to his defense was not present. Certainly, the absence of a vital defense witness, under appropriate circumstances, generally constitutes good cause for a continuance. (See *Jennings v. Superior Court* (1967) 66 Cal.2d 867, 876.) The trial court, however, responded by advising defendant he had to file a written motion at least two days before the contested hearing to request a continuance and denied defendant's subsequent request to make an oral motion for a continuance, without giving defendant

---

[7] All further section references are to the Penal Code.

11

an opportunity to present any good-cause argument. While a trial court is presumed to be aware of and follow the applicable law (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496), the record indicates the trial court insisted the *only* way defendant could seek a continuance was by filing a written motion to continue. As noted, *ante*, however, section 1050, subdivision (c) expressly provides a defendant may orally present a motion to continue and the motion may be granted if supported by a showing of good cause. The trial court's ruling indicates the trial court was unaware of or misunderstood the scope of its discretion to consider an oral motion. The trial court thus abused its discretion. (See *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297-1298.)

The next question is whether the error prejudiced defendant. A defendant is prejudiced if it is reasonably probable a result more favorable to the defendant would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

As noted *ante*, when a defendant requests a continuance without proper notice, section 1050, subdivision (d), outlines a two prong test for determining good cause. That is, for the trial court to have granted defendant's untimely request to continue the contested hearing, there must have been good cause for both (1) defendant's failure to provide notice of the request; and (2) to continue the hearing. (§ 1050, subd. (d).)

As to the first prong, because the trial court prevented defendant from explaining the grounds for his request, it is unknown whether defendant learned Larry was absent on the date of the hearing or if he knew on some date before the hearing that Larry would be absent. The colloquy between defendant and the trial court, however, suggests defendant did not know of the witness's absence until the day of the hearing. Defendant said the witness was not present, "is not here," and is "not available here." In the absence of knowing before the hearing that Larry would be absent, defendant's failure to provide notice was good cause to consider his request to make an oral motion.

12

As to the second prong, to establish good cause to continue a hearing in a criminal proceeding where a defendant, as here, alleges the absence of witnesses as the basis for a continuance, it must be shown, "he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven." (*People v. Howard* (1992) 1 Cal.4th 1132, 1171.)

The People argue, because the witness's attendance was not compelled through a legally valid subpoena, defendant failed to exercise due diligence to secure the witness's attendance. Defendant's failure to compel a witness by way of a legally valid subpoena is not, however, dispositive on due diligence. (See, e.g., *People v. Banks* (1966) 242 Cal.App.2d 373, 377 [delay in securing a subpoena, standing alone, does not show a lack of due diligence in securing the attendance of a witness].)

In arguing defendant failed to exercise due diligence, the People cite to our Supreme Court's decision in *Riggs*. (*People v. Riggs* (2008) 44 Cal.4th 248.) In *Riggs*, the defendant challenged the trial court's refusal to grant further continuances to allow him to secure the attendance of additional witnesses. The defendant had been granted several continuances, but repeatedly failed to produce the witnesses for whom the continuances were sought. (*Id.* at pp. 294-295.) In concluding no abuse of discretion was shown, our Supreme Court stated, because "the trial court could have properly found that the inability to have these witnesses available was caused by defendant's lack of diligence, such as *repeatedly* attempting service on out-of-state witnesses by mail, despite being advised that such procedures were not proper, and not by factors beyond defendant's control," and because the witnesses' testimony was immaterial to establishing the defendant's alibi, the trial court did not abuse its discretion in denying the defendant's request for a continuance. (*Id.* at pp. 296, 297, italics added.) Due diligence was determined not by whether the witnesses were properly subpoenaed, but

13

rather by the totality of the defendant's efforts, or lack thereof, to secure the witness's attendance, despite being granted multiple continuances to correct his errors and produce the witnesses at trial. (*Id.* at p. 297.) The People have presented no argument that the facts in this case are anything like those in *Riggs*.

There is no mechanical or bright-line definition of "due diligence." (*People v. Cromer* (2001) 24 Cal.4th 889, 904.) Rather, what constitutes due diligence, "depends upon the specific facts of the individual case" and the totality of efforts used to locate the witness. (*People v. Sanders* (1995) 11 Cal.4th 475.)

As noted *ante*, defendant sought to continue the contested hearing to secure the attendance of Larry. Although the subpoena was rendered legally invalid by defendant's error in serving it himself, Larry was purportedly served with the subpoena, indicating defendant knew where to locate Larry and that defendant made an effort to compel the witness's testimony through the legal process. Further, unlike in *Riggs*, the issue with service of defendant's subpoena was not brought to light until the date of the contested hearing, giving him no opportunity to remediate any deficiencies. Thus, in the days prior to the hearing, defendant presumably believed the witness had been properly subpoenaed.

It appears from the record that Larry's expected testimony reasonably could have been material and not cumulative to defendant's case, even though the trial court failed to give defendant an opportunity to discuss the expected context and scope of Larry's testimony at the hearing. The crux of defendant's case rested on Brenda's lack of credibility and establishing his alibi through eyewitness testimony.

At the outset, defendant asserted an eyewitness vital to his defense was not present. Stephen testified Larry was with him on July 16 when they went to Brenda's and defendant's house in the afternoon and observed Brenda intoxicated without injuries, and they and defendant did not return to the house until approximately 6:00 p.m. or 7:00 p.m. -- after Brenda reported the assault had occurred. He further testified Larry or defendant generally coordinated the schedules regarding their projects and they often had multiple

14

projects a day. The trial court found Stephen's testimony not credible because he was "very vague and ha[d] selective recall as far as the date in question." Larry's testimony, if he were in fact a corroborating eyewitness regarding the date in question, was reasonably likely to provide material and corroborating testimony as to the date in question. "When the evidence discloses the person unavailable either participated in the crime charged, or was a nonparticipating eyewitness to the offense, in a position to perceive what took place from a sufficiently proximate vantage point, such person is a material witness, and the defendant has demonstrated a reasonable possibility he could, if available, give evidence which would exonerate him." (*People v. Mejia* (1976) 57 Cal.App.3d 574, 580.)

We further note Brenda told multiple versions of what had occurred on July 16. Her version of the events changed between what she reported to Sergeant Parker, what she testified to at the contested hearing, and what she testified to as included in the declaration, which was ultimately deemed inadmissible. Because of Brenda's vague and selective recall, the trial court found her testimony was not particularly credible, relying instead on her statements *to police and hospital staff* on the day the offense occurred. Yet, no hospital staff were called as witnesses at the hearing, and Sergeant Parker testified he observed the general appearance of the residence to be consistent with a scuffle, but provided no testimony regarding the room in which Brenda said the assault occurred, which would have supported her version of the events that the altercation with defendant occurred in *her bedroom* in their shared residence.

The trial court's determination, finding the evidence sufficient to prove defendant violated his probation in the battery and firearm cases by a preponderance of the evidence, rested on the credibility of the witnesses. Thus, any evidence that could have been provided by a missing witness to corroborate other witnesses' testimony would have been material to and not cumulative in determining credibility. If a continuance had been granted and Larry had been permitted to testify, his testimony could have bolstered Stephen's credibility and provided greater certainty as to the dates and times in question,

15

which the trial court found lacking in Stephen's testimony. Further, because Stephen testified Larry was generally responsible for coordinating when and where they worked each day, Larry may have been more suited to provide specific evidence establishing dates and times. Thus, because Larry could have provided credible evidence establishing defendant's alibi not already established through credible sources, and could have contradicted the version of events Brenda told Sergeant Parker (upon which the trial court relied), his testimony was both material and not cumulative. (See *People v. Buckey* (1972) 23 Cal.App.3d 740, 744 [trial court abused its discretion in denying defendant's request to continue trial to secure the witness's attendance, where the witness's expected testimony was critical to the defendant's sole defense].)

Lastly, the People argue defendant failed to establish the likelihood that a continuance would have resulted in the production of Larry's testimony or evidence in support of the defense. But, of course, defendant was never given an opportunity to address this question. Presumably, even though defendant's subpoena was deemed invalid, defendant was able to serve Larry, and he was thus likely aware of Larry's address or other contact information. Nothing in the record reveals Larry was elusive or uncooperative, rendering it likely his testimony could have been obtained within a reasonable time. (See *Owens v. Superior Court* (1980) 28 Cal.3d 251.) Further, the record does not indicate defendant made any prior requests to continue the contested hearing or that his request was made merely to delay the proceedings. (Cf. *People v. Courts*, *supra*, 37 Cal.3d 784, 790-791 [a continuance may be denied if the defendant is unjustifiably dilatory].)

For these reasons, we conclude it is reasonably probable a result more favorable to defendant would have been reached if the trial court granted defendant a continuance to secure Larry's attendance and testimony at the contested hearing.

## DISPOSITION

We reverse the orders revoking and terminating defendant's probation, vacate the resulting sentence, and remand the matter to the trial court for a new probation revocation hearing and further proceedings as necessary.

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Duarte, J.

/s/_____
Hoch, J.